589 A.2d 993

**BOARD OF EDUCATION OF CHARLES COUNTY, MARYLAND**

v.

**Eulo REGALA, et al.**

No. 1084, Sept. Term, 1990.

Court of Special Appeals of Maryland.

May 13, 1991.

Christopher C. Henderson (Edward S. Digges, on the brief), La Plata, for appellant.

Charles A. Reese and Reese and Carney, Columbia, for Amicus Curiae, Maryland Ass'n of Boards of Educ.

Susan W. Russell (Walter S. Levin, on the brief), Baltimore, for appellees.

Argued before BISHOP, ALPERT, and GARY G. LEASURE (Specially assigned), JJ.

BISHOP, Judge.

Appellees, Eulo Regala and the Charles County Education Association (the Association)[1], requested the State Board of Education (the State Board) to issue a declaratory ruling as to whether, under Md.Educ.Code Ann. § 6–401 *et seq.*, the removal or demotion of a teacher from an extracurricular coaching assignment for other than just cause is subject to

---

1. The Association has been the exclusive representative of the professional employees of the Board of Education of Charles County since Regala was originally hired as a professional certificated teacher in 1976.

collective bargaining. The State Board determined that the failure to reappoint Regala to his extracurricular coaching position was a legal topic of collective bargaining. The Charles County Board of Education appealed to the Circuit Court for Charles County which found no error in the opinion reached by the State Board. This appeal followed, and the Board of Education of Charles County raises one issue:

> Whether the circuit court erred when it determined that the failure to reappoint appellant to an extracurricular coaching position was a legal topic of collective bargaining.

### Facts

Appellee Eulo Regala was employed as a physical education teacher at Lackey High School in Charles County. He also served as coach for several athletic teams, including the football team, and received supplemental pay for these positions in accordance with the provisions of the collective bargaining agreement between the Association and the Board of Education. At the conclusion of the 1982–83 season, the principal of Lackey High School decided not to reappoint Regala to the position of head football coach, which he had held since the 1979–80 season.

Mr. Regala filed a grievance under the agreement and the arbitrator found that there was no just cause for failure to reappoint him. The Charles County Board of Education sought a court order to vacate the award and the Circuit Court for Charles County retained jurisdiction pending the State Board's decision on the question of whether the grievance was a legal subject for negotiation.

### Discussion

■ Before addressing the issue presented in the case *sub judice,* it is important to define the scope of our review with regard to decisions of the Maryland State Board of Education. Section 2–205 of the Education Article contains the powers and duties of the State Board. These powers

and duties include, *inter alia,* the exercise of general control and supervision over the public schools and educational interests of the State of Maryland, the determination of elementary and secondary educational policies, and the power to adopt bylaws, rules and regulations for the administration of public schools. Section 2–205(e)(2) specifically provides that "[t]he Board shall decide all controversies and disputes under [the] provisions [of the Education Article]." All decisions of the Board are final. Md.Educ.Code Ann. § 2–205(e)(3).

In *Board of Educ. of Prince George's Co. v. Waeldner,* 298 Md. 354, 360, 470 A.2d 332 (1984) the Court of Appeals discussed the statutory powers of the State Board:

The totality of these provisions has been described as a visitatorial power of such a comprehensive character as to invest the State Board 'with the last word on any matter concerning educational policy or the administration of the system of public education.' The broad sweep of the State Board's visitatorial power has been consistently recognized and applied since the principle was first enunciated in 1879 in *Wiley v. School Comm'rs,* 51 Md. 401.

*Id.* (citations omitted).

In *Wiley,* the Court of Appeals recognized that the function of the State Board's visitatorial power is to keep disputes regarding the administration of Maryland's public schools out of the court system, while at the same time providing an opportunity to be heard. The *Wiley* Court stated:

If every dispute or contention among those entrusted with the administration of the system, or between the functionaries and the patrons or pupils of the schools, offered an occasion for a resort to the courts for settlement, the working of the system would not only be greatly embarrassed and obstructed, but such contentions before the court would necessarily be attended with great costs and delay, and likely generate such intestine heats and divisions as would, in a great degree, counteract the beneficient purposes of the law. It is to obviate these

consequences that the visitatorial power is conferred; and wherever that power exists, and is comprehensive enough to deal with the questions involved in an existing controversy, as is the case here, courts of equity decline all interference, and leave the parties to abide the summary decision of those clothed with the visitatorial authority.

*Wiley,* 51 Md. at 406.

In *Montgomery Co. Ed. Ass'n v. Bd. of Ed. of Montgomery Co.,* 311 Md. 303, 534 A.2d 980 (1987) the Court of Appeals succinctly stated the applicable standard of review with regard to appeals from State Board decisions:

It is true that, under our cases, a reviewing court shall not always defer entirely to the State Board's interpretation of a statute. If the State's Board's interpretation or application of § 6–408(b)(1), in a particular situation, would clearly be contrary to the statute's plain meaning, a reviewing court must reject that interpretation.

*Id.* at 309, 534 A.2d 980. The court further stated that "[u]nless it is demonstrated in a particular case that the line drawn by the State Board under § 6–408(b)(1) [2] is arbitrary, or clearly in violation of the Education Article, or otherwise contrary to law, the State Board's determination will normally be controlling." *Id.* at 318, 534 A.2d 980.

## I.

Section 6–408(b)(1) constitutes the sole authorization for local boards of education to engage in collective bargaining. This section mandates that "a public school employer ... *shall* meet and negotiate ... on all matters that relate to salaries, wages, hours, and other working

---

2. § 6–408(b)(1) provides:
 b) Representatives to negotiate.—
 (1) On request a public school employer or at least two of its designated representatives shall meet and negotiate with at least two representatives of the employee organization that is designated as the exclusive negotiating agent for the public school employees in a unit of the county on all matters that relate to salaries, wages, hours, and other working conditions.

conditions." (Emphasis Supplied). Absent express legislative authority, a government agency may not enter into binding arbitration agreements under which an arbitrator establishes the wages, hours, salaries, and other working conditions for public employees. 311 Md. at 313, 534 A.2d 980 (citations omitted). According to *Montgomery County Education Association,*

> [t]he purpose of this rule is to insure that a governmental agency does not, without authority, abdicate or bargain away its statutory discretion.
>
> &ast; &ast; &ast; &ast; &ast; &ast;
>
> Any particular subject either will or will not fall within the scope of [Section 6–408(b)(1)]. If a subject falls within the provision, the language of the statute makes it a mandatory subject of collective bargaining. If it does not come within this provision, there is no other legislation authorizing collective bargaining and arbitration with regard to the subject, and, under our cases, a local board would be without authority to negotiate a binding arbitration agreement covering the matter. Therefore, under § 6–408(b)(1) and this Court's decisions, a local board is either required to agree to negotiate a particular subject, or it is not permitted to agree to negotiate that subject. Maryland law leaves no room for subjects that a local board may, but need not, agree to negotiate.

*Id.* (citations omitted). Based on these principles, when determining whether a particular topic must be or may not be the subject of negotiation, the first consideration is whether there is a statute which precludes negotiation by delegating authority to the local board.

If no such statute exists, the interests of the employee are balanced against the interests of the school system as a whole. Under this balancing test,

> § 6–408(b)(1) may not be construed to encompass matters that predominantly concern the determination of educational policy or the administration of the public schools. Matters of greatest importance to the community at large will be decided in the governmental arena, in which public

employees can participate on an equal basis with other interested groups. On the other hand, matters of greatest direct importance to public employees will be subject to collective bargaining.

311 Md. at 318, 534 A.2d 980. Of course, the distinction between educational policy and matters of direct fundamental concern to employees is "elusive in many contexts." *Bd. of Ed. for Dorchester Co. v. Hubbard,* 305 Md. 774, 792, 506 A.2d 625 (1986).

 In the case *sub judice,* however, we find that the State Board's decision was neither arbitrary, capricious, nor contrary to law. The State Board determined that Regala's assignment and removal from the head coach position was from a voluntary, non-scholastic, extracurricular activity that was not required for graduation. The fact finding also indicated that Regala was hired as a teacher, not as a coach, and that the school system may employ people from outside the school system for coaching positions if certified teachers are unavailable.

The State Board concluded that, under § 6–408 of the Education Article, Regala's assignment and removal was a negotiable issue and that the hiring and termination of a football coach have a greater impact on the employee and his working conditions than on the school system's educational policy. The State Board found, therefore, that the failure to reappoint Regala to his coaching position was a legal topic of collective bargaining. Even if we did not agree with the conclusions reached by the State Board, we place great weight upon its expertise. We find that the State Board's decision was neither arbitrary nor contrary to the law of Maryland and, consequently, the determination that the failure to reappoint Regala to his coaching position was a legal topic of collective bargaining is controlling.

JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANT.