643 A.2d 523

**George F. LIVERS, et al.**

v.

**BOARD OF EDUCATION OF CHARLES COUNTY.**

**No. 1720, Sept. Term, 1993.**

Court of Special Appeals of Maryland.

July 1, 1994.

Certiorari Denied Dec. 7, 1994.

Joel A. Smith, argued (Christyne L. Neff and Kahn, Smith & Collins, P.A., on the brief), Baltimore, for appellants.

Christopher C. Henderson, argued (Edward S. Digges, on the brief), La Plata, for appellee.

Argued before BLOOM, WENNER and MURPHY, JJ.

WENNER, Judge.

Appellant, George Livers (Livers), was employed by appellee, the Charles County Board of Education (CCBOE), as a Building Equipment Technician. In June of 1991, the CCBOE dismissed Livers. Although the local branch of the American Federation of State, County, and Municipal Employees AFL–CIO (AFSCME), sought to arbitrate Livers's dismissal, pursuant to the negotiated agreement between it and the CCBOE, the CCBOE refused to submit to arbitration. The arbitration proceeding was stayed, and Livers submitted the question of whether the CCBOE must participate in grievance arbitration to the Maryland State Board of Education (the State Board). The State Board ruled that Livers's dismissal was not a legal subject of bargaining. Livers then noted an appeal to the Circuit Court for Charles County, which affirmed the decision of the State Board. This appeal followed. On appeal, Livers asks us:

> Was the Maryland State Board of Education's ruling correct that grievance arbitration over discipline or dismissal is an illegal subject of bargaining contrary to Md.Code Ann.Educ. Art. § 6–510(b).[1]

---

1. In his brief, Livers also presents the following issues which, in our opinion, constitute but arguments in support of the above issue:

    1. May a local board of education lawfully negotiate with a bargaining agent for non-certificated public school employees over the remedies or means by which the organization may challenge any discipline or discharge of a non-certificated employee?

    2. Was the Maryland State Board of Education's ruling in this matter contrary to the ALJ, based on substantial evidence in that it contradicted the factual findings of the ALJ and it lacked support of any record evidence in support?

    3. Was the County Board of Education obligated as a matter of law to honor grievance arbitration provisions as defined in a negotiated labor agreement with its non-certificated employees, and as defined in its own local rules?

Finding no error, we shall affirm the decision of the circuit court.

## BACKGROUND

AFSCME Local 2981 (the Union) is the collective bargaining agent for non-certificated employees of the CCBOE.[2] The Union's agreement (the Agreement) with the CCBOE provided, among other things, that the discipline and dismissal of non-certificated employees were matters subject to arbitration.

On May 9, 1991, the CCBOE's Assistant Superintendent for Supporting Services (Assistant Superintendent) notified Livers, a non-certificated employee, that, pursuant to the policy of the CCBOE, he was suspended without pay until disposition of drug related criminal charges that had been filed against him. On June 11, 1991, the State nolle prossed the drug related criminal charges. On June 18, 1991, the Assistant Superintendent dismissed Livers for misconduct.

Livers challenged his dismissal by filing a grievance pursuant to the procedures outlined in Article 26 of the Agreement. On July 25, 1991, after several timely intermediate appeals, the Superintendent of the CCBOE (the Superintendent) affirmed Livers's dismissal. On August 9, 1991, the Union notified the CCBOE that, pursuant to Article 27, Section G of the Agreement, it was electing to proceed to arbitration. Subsequently, the Union filed a formal request for arbitration with the American Arbitration Association (AAA), and the AAA appointed an arbitrator, notifying all parties that Livers's grievance would be arbitrated on March 25, 1992.

Refusing to submit to arbitration, the CCBOE filed a Complaint for Declaratory Judgment and Stay of Arbitration in the Circuit Court for Charles County. Acting under a consent order, the circuit court stayed the arbitration until the State Board rendered a declaratory ruling as to the arbitrability of

---

**2.** Non-certificated employees are all those who do not have a certificate to teach.

Livers's grievance. Upon receiving Livers's appeal, the State Board assigned it to an administrative law judge (ALJ). Ruling in favor of Livers and the Union, the ALJ recommended that the CCBOE be required to proceed to arbitration. The State Board rejected the ALJ's recommendation, holding that "a public school employer may not bargain over the remedies or means by which a non-certificated employee may challenge a discipline or discharge decision." The State Board pointed out that Livers could challenge his dismissal in accordance with the procedures set forth in Md.Code (1974, 1991 Repl.Vol.), § 4–205(c)(4) of the Education Article (EA). As we have said, the circuit court affirmed the decision of the State Board.

## I.

EA § 6–510(b) defines the scope of bargaining between public school employers and unions as to non-certificated employees:

> On request, a public school employer or at least two of its designated representatives shall meet and negotiate with at least two representatives of the employee organization that is designated as the exclusive negotiating agent for the public school employees in a unit of the county **on all matters that relate to salaries, wages, hours, and other working conditions.**

EA § 6–408(b)(1) contains identical language in the subtitle concerning certificated employees. In construing EA § 6–408(b)(1), the Court of Appeals has made it clear that the State Board retains authority to determine matters of educational policy and that, as a consequence, such matters are not proper for negotiation between local school boards and union representatives. *Montgomery Co. Ed. Ass'n v. Bd. of Educ.*, 311 Md. 303, 534 A.2d 980 (1987) (MCEA v. Bd. of Ed.). The Court recognized, however, that

> no clear line distinguishes matters of educational policy from matters subject to collective bargaining. (citations omitted). For example, matters that fall directly under

§ 6–408(b)(1) such as salary levels and hours of work also implicate educational policy considerations: higher salaries for some teachers may be necessary to attract or retain qualified personnel, and longer hours may enhance educational achievement ... In fact, virtually every managerial decision in some way relates to "salaries, wages, hours, and other working conditions," and is therefore arguably negotiable. At the same time, virtually every such decision also involves educational policy considerations and is therefore arguably nonnegotiable. Consequently, to determine whether a particular matter falls within § 6–408(b)(1), the State Board has balanced the interests of the school system as a whole.

*Id.* at 316, 534 A.2d 980.

The Court explained that the State Board's balancing approach was reasonable because it "exempts from collective bargaining those matters that predominantly concern the determination of educational policy but preserves the local board's duty to negotiate matters of direct fundamental concern to employees ." *Id.* at 317, 534 A.2d 980.

The Court also observed that, inasmuch as the line between educational policy matters and matters subject to arbitration is difficult to draw and may often be "ad hoc,"

application of the State Board's expertise is extremely important. Unless it is demonstrated in a particular case that the line drawn by the State Board under § 6–408(b)(1) is arbitrary, or clearly in violation of the Education Article, or otherwise contrary to the law, the State Board's determination will normally be controlling.

*Id.* at 318, 534 A.2d 980. With these principles firmly in mind, we turn to the decision of the State Board and Livers's arguments.

## II.

In its written opinion, the State Board explained that, in order to resolve this issue, it had utilized the balancing test

to determine whether the interests of the employee in the matter outweigh the interests of the school system as a whole in the matter. If the employee's interests outweigh those of the school community, the matter is a negotiable subject of bargaining. If the school system's interests predominate, the matter is non-negotiable matter of educational policy within the local board's control.

It noted that Livers had argued that the scale should tip in his favor because "the only way that he may get a fair hearing on a discipline or discharge decision is through the grievance process and ultimately through arbitration." The CCBOE, on the other hand, pointed out that

[m]any times administrative actions concerning discipline and discharge arise as a result of corrupt or criminal actions of an employee such as sexual assault upon a student, sale of a controlled dangerous substance to a student, or driving a school vehicle while intoxicated. If procedures for discipline and discharge in these circumstances were negotiable, the parties to a collective bargaining agreement may require that any discharge or suspension must be preceded by a ten-day investigation during which the employee remains at his normal employment duties ... [T]o allow negotiation on these matters would necessarily impede the ability of a local board to provide its students with a sound and safe educational environment.

Agreeing with the position of the CCBOE, the State Board held that "the remedies or means by which a non-certificated employee may challenge a discipline or discharge decision are non-negotiable matters of educational policy within the exclusive province of the local school system."

Citing *Washington County Educational Classified Employees Association v. Board of Education of Washington County (WCECEA v. Bd. of Ed.)*, 97 Md.App. 397, 629 A.2d 1330, *cert. denied*, 333 Md. 201, 634 A.2d 62 (1993), Livers argues that application of the balancing test was not necessary because the issue concerning the means by which he may challenge his

discharge is clearly procedural, and therefore an appropriate matter for negotiation.

In our view, Livers has misinterpreted *WCECEA v. Bd. of Ed.* In *WCECEA v. Bd. of Ed*, we emphasized that "there are few bright lines for distinguishing negotiable issues from non-negotiable issues." *Id.* at 402, 629 A.2d 1330. Although we noted that, "in dealing with the question of what matters are negotiable under § 6–408(b), the State Board has drawn a distinction between the procedural and substantive aspects of those matters," we also recognized the often difficult task of "distinguishing between what is procedural and what is substantive." *Id.* at 403–04, 629 A.2d 1330.

■ In *WCECEA v. Bd. of Ed.*, we did not create a new "test" for determining what issues are negotiable or non-negotiable, based on the procedural/substantive dichotomy. We emphasize here, as the Court of Appeals did in *MCEA v. Bd. of Ed.*, that it is the State Board's task to determine a proper subject of negotiation, by balancing matters of educational policy against those of interest to school board employees. In short, the State Board's balancing analysis was appropriate.

Alternatively, Livers argues that, even if the application of the balancing analysis was appropriate, "the character of grievance arbitration clearly tips the scales in the direction of it being a mandatory subject of bargaining." He points out that the State Board's conclusion to the contrary is neither supported by the record nor based upon "reasoned elaboration." Moreover, Livers argues that the State Board should have considered the fact that the EA provides non-certificated employees with less procedural protections than it does certificated employees.

■ We emphasize that, in reviewing a case such as the one at hand, we are bound by the decision of the State Board unless "the line drawn by the State Board . . . is arbitrary, or clearly in violation of the Education Article, or otherwise contrary to the law." *MCEA v. Bd. of Ed., supra*, 311 Md. at 318, 534 A.2d 980; *Board of Educ. v. Regala*, 87 Md.App. 344,

348–50, 589 A.2d 993, *cert. denied,* 324 Md. 121, 596 A.2d 627 (1991). In *MCEA v. Bd of Ed.,* recognizing the "ad hoc" nature of the State Board's balancing approach, the Court of Appeals emphasized that the "State Board's expertise is extremely important." *Id.* 311 Md. at 318, 534 A.2d 980.

■ Applying this heightened deferential standard of review, we hold that the circuit court did not err in affirming the decision of the State Board. We fully agree with the circuit court's analysis, set forth in its Opinion and Order:

> I appreciate the fact that Mr. Livers' interest in reinstatement to his position is no less important to him than is controlling exposure by students and staff to persons it feels should be excluded from its premise and payroll to a school board. At issue, however, is the question of whether the board's ability to manage its system and in doing so determine who will and who will not be a part of that system will be adversely affected should the local board be required to collectively bargain about discipline and discharge procedures. The State Board's conclusion, consistent with a court approved process, does not appear to have been done arbitrarily or to be clearly contrary to the Education Article or otherwise in violation of law. Where the legislature has failed to draw a clear line between educational policy matters and matters involving wages, working hours and working conditions, application of the State Board's expertise in the area should be accorded substantial deference.

### III.

■ Livers points out that the Superintendent had promulgated Local Board Rules paralleling the grievance procedure contained in the Agreement. Hence, the Local Board Rules also provided for arbitration, if necessary. Livers argues that, pursuant to the *"Accardi* doctrine," the CCBOE was bound to follow these formally promulgated rules and policies. The *"Accardi* doctrine" essentially provides that administrative agencies must follow their own rules. *Board of School Comm'rs v. James,* 96 Md.App. 401, 421, 625 A.2d 361, *cert.*

*denied,* 332 Md. 381, 631 A.2d 451 (1993) (citing *United States ex rel Accardi v. Shaughnessy,* 347 U.S. 260, 268, 74 S.Ct. 499, 503–04, 98 L.Ed. 681 (1954)).

In light of our holding that the State Board did not act arbitrarily in concluding that the procedures by which a non-certificated employee may grieve his or her dismissal is not subject to collective bargaining, Livers's argument is of no effect. As the CCBOE points out in its brief, since the State Board has declared the Local Board Rules providing for arbitration to be *ultra vires* and of no effect, the Local Board Rules cannot now provide an independent basis for allowing arbitration to proceed. If that were the case, the State Board's power to decide finally the proper scope of collective bargaining would be of no effect.

Similarly, Livers argues that the CCBOE, as a result of its contract with each of its employees, must honor its agreement to arbitrate. Livers points out that the contract arises out of the assignment letter received by all employees.

We again emphasize that the State Board did not act arbitrarily in ruling that the CCBOE had exceeded the proper scope of collective bargaining when it negotiated procedures by which a non-certificated employee could grieve his or her dismissal. Consequently, we reject Livers's argument that the CCBOE is contractually bound to honor procedures declared by the State Board to be *ultra vires.*

**JUDGMENT AFFIRMED. COSTS TO BE PAID BY APPELLANT.**