**REPORTED**

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 009
September Term, 2013
_____

HOWARD COUNTY EDUCATION
ASSOCIATION-ESP, INC.

v.

BOARD OF EDUCATION OF HOWARD
COUNTY
_____

No. 054
September Term, 2013
_____

HOWARD COUNTY EDUCATION
ASSOCIATION-ESP, INC.

v.

BOARD OF EDUCATION OF HOWARD
COUNTY
_____

Meredith,
Zarnoch,
Eyler, James R.
  (Retired, specially assigned),

JJ.
_____

Opinion by Meredith, J.

_____

Filed: December 1, 2014

Andrea M. Leahy did not participate in the
Court's decision to report this opinion pursuant
to Md. Rule 8-605.1.

In these consolidated appeals, we will resolve a dispute between two State agencies that have taken conflicting positions with respect to whether the collective bargaining agreement between a county board of education and the labor representative for support employees can legally include a requirement providing for arbitration of disputes regarding the discharge of such employees. The Maryland State Board of Education has taken the position that, because the power to appoint and terminate nonprofessional personnel is committed to the county superintendent of schools, the arbitration provision which appellee Board of Education of Howard County agreed to include in its collective bargaining agreement was illegal and nonbinding. The Circuit Court for Howard County accepted the State Board of Education's interpretation of the law on this point, and enjoined the labor representative's efforts to compel arbitration of a school nurse's discharge. But the Maryland Public School Labor Relations Board takes a contrary view of the law, and has taken the position that the provision in the Howard County collective bargaining agreement providing for binding arbitration of disputes regarding the discharge for cause of nonprofessional employees is legally enforceable. In an amicus brief, the Maryland Attorney General agrees with the labor relations board. And so do we. Accordingly, we shall rule in favor of the appellant, Howard County Education Association-ESP, Inc., and reverse the judgments of the Circuit Court for Howard County.[1]

---

[1] Appellant presents three questions for our consideration:

(continued...)

# BACKGROUND

The incident that precipitated the dispute between two State agencies was the discharge of a school nurse who was an employee of the Board of Education of Howard County, appellee. Because this employee was covered by a collective bargaining agreement that provided "[n]o employee will be discharged without cause," her labor representative — Howard County Education Association-ESP, Inc., appellant — filed a grievance asserting that there was insufficient cause to impose the ultimate disciplinary sanction of discharge. The county board of education rejected the employee's grievance,

---

[1](...continued)

1.    Did the Maryland State Board of Education exceed the scope of its statutory authority when it ruled that language contained in Article 4.1 of the parties' Master Agreement providing that "no employee will be discharged without cause" was not subject to binding arbitration, thereby declaring it a de facto illegal subject of bargaining pursuant to § 6-510(c)(3) of the Education Article?

2.    Did the Maryland State Board of Education err as a matter of law in its statutory interpretation of § 6-201 of the Education Article upholding its 2005 determination that a superintendent's power to remove is incident to the power to appoint despite subsequent legislative changes to the statutory scheme?

3.    Should the decision of the Maryland Public School Labor Relations Board, which is vested with statutory authority to interpret Title 6, Subtitle 5 and to render final determinations on whether a disputed topic is mandatory, permissive, or illegal, be upheld and the permanent injunction issued by the trial court vacated?

For the reasons explained herein, we answer questions 1 and 3 in the affirmative and we will reverse. We need not address question 2 as worded.

2

and advised the employee's labor representative that, despite the fact that the collective bargaining agreement had provided for such issues to be subject to the grievance process, the discharge of a non-certificated employee such as the school nurse "is an illegal subject of bargaining and thus not grievable."

Relying upon another provision in the collective bargaining agreement, the employee's labor representative then filed a demand for arbitration with the American Arbitration Association. Rather than submit to arbitration, the Board of Education of Howard County filed suit against the Howard County Education Association-ESP, Inc., in the Circuit Court for Howard County to enjoin the arbitration. The county school board alleged that, notwithstanding any provision in the applicable collective bargaining agreement, "[b]y statute and case law, a county Superintendent of Schools has the sole authority to dismiss a non-certificated employee," and therefore, the arbitration provision "that affects the merits of the Superintendent's discussion to terminate a non-certificated employee is contrary to law and invalid." The circuit court issued a preliminary injunction providing that the arbitration was stayed. But the preliminary injunction further provided that it would expire in ten days "unless one or both of the parties file a request with the Maryland State Board of Education or the Public School Labor Relations Board for statutory interpretation . . . ." The Board of Education of Howard County asked the Maryland State Board of Education for a declaration of interpretation, and the Howard

3

County Education Association-ESP, Inc., similarly asked the Maryland Public School Labor Relations Board for its statutory interpretation.

The Maryland State Board of Education issued an opinion pursuant to its power under Maryland Code (1978, 2008 Repl. Vol., 2011 Supp.), Education Article ("Educ."), § 2-205(e)(1), which authorizes the agency to "explain the true intent and meaning of the provisions of [the Education Article]." The opinion recognized that the nurse had filed a grievance challenging her termination pursuant to Article 4.1 of the collective bargaining agreement, which provided in part: "No employee will be discharged without cause." The opinion also noted that the collective bargaining agreement provided that an employee who was not satisfied with the county board's ruling on a grievance could submit the dispute "to arbitration under the Voluntary Labor Arbitration Rules of the American Arbitration Association," and the agreement provided that "[t]he arbitrator's decision shall be final and binding on all parties." The opinion also recognized that the Maryland Public School Labor Relations Board had also been asked to issue an opinion regarding this same controversy, and it had ruled that "discipline and discharge is a mandatory subject of bargaining and that the grievance involved here is 'subject to arbitration.'" Notwithstanding the authority of the labor relations agency to decide whether a "proposed topic for negotiation is a mandatory, a permissive, or an illegal topic of [collective] bargaining," the State Board of Education asserted: "[W]e retain

4

jurisdiction to explain the true intent and meaning of all other sections of the Education Article."

The State Board of Education's opinion initially interpreted the arbitration provision in the collective bargaining agreement as being voluntary rather than mandatory because the provision states that "the grievance may be submitted to arbitration." If this interpretation was correct, and the superintendent retained the option to voluntarily submit a dispute to arbitration, the opinion stated, the non-delegable duty of the superintendent would not be impinged. But, because "the true intent and meaning of [Educ.] § 6-201 is that the power to hire and fire is non-delegable," the opinion expressed the following conclusion: "If the superintendent's decision to terminate is subject to mandatory binding arbitration, it is our view that that would violate [Educ.] § 6-201."

In followup correspondence with counsel for the local board of education, after counsel for the Board of Education of Howard County pointed out that the nurse's collective bargaining agreement in fact "provides for mandatory binding arbitration of an employee grievance," the State Board of Education confirmed that it would consider "such a provision to violate § 6-201(c) of the Education Article."

In the meantime, the Maryland Public School Labor Relations Board considered the same dispute pursuant to its authority under Educ. § 2-205(e)(4) to "decide any controversy or dispute arising under Title 6, Subtitle . . . 5 of [the Education Article]," and its authority under Educ. § 6-510(c)(5)(i) to decide the "final resolution" of any

5

dispute between a "public school employer and an employee organization" as to "whether a proposed topic for negotiation is . . . an illegal topic of bargaining." It is the opinion of this agency that Educ. § 6-510(c)(5)(i) "expressly charges the PSLRB with responsibility for resolving the type of negotiability dispute that is presented in this case." The labor relations board observed: "[T]he State Board [of Education's] interpretation of Section 6-201(c)(1) may (or may not) have some bearing on whether Section 4.1 of the [collective bargaining] Master Agreement deals with a mandatory or an illegal subject of bargaining, but under the express language of Section 6-510(c)(5)(i), the authority to resolve that question resides with the PSLRB." The answer to that question, the labor relations board concluded, was self-evident from the express language of Educ. § 6-510(c)(1), which requires a public school employer to negotiate with the employees' labor representative "on all matters that relate to . . . working conditions, **including the** discipline and **discharge of an employee for just cause**." (Emphasis added.)

Although the labor relations board considered the language clear enough to be dispositive, it also considered the legislative history of the statutory provisions to be supportive of its interpretation. In its written opinion, it provided the following detailed explanation for its conclusion that the dispute regarding the discharge of the school nurse was properly covered by the collective bargaining agreement and properly subject to binding arbitration:

> For many years prior to the 1990s, Maryland's collective bargaining
> statute provided only for mandatory subjects of bargaining, defined as "all

6

matters related to salaries, wages, hours, and other working conditions." At that time, both the State Board and the courts permitted boards of education and exclusive representatives to negotiate a just cause standard for discipline and discharge, and to arbitrate such disputes. In 1994, however, the Maryland Court of Special Appeals, in *Livers v. Board of Educ. of Charles County,* 101 Md. App. 160 (1994), deferred to the interpretation of the State Board of Education, which held that "the remedies or means by which a non-certificated employee may challenge a discipline or discharge decision are non-negotiable matters of educational policy," and therefore an illegal subject of bargaining. *Id.* at 409. While many agreements, including those between HCEA-ESP and the County Board, continued to include language regarding just cause for discipline and discharge, such language was no longer enforceable, and disputes were subjected to the administrative appeal process in [Education Article] Section 4-205.

In 2002, the General Assembly made significant changes to the collective bargaining statute [in the Education Article] by creating mandatory, permissive, and illegal subjects of bargaining. At that time, Section 6-510(b) was amended to read as follows (added language in Section 510(b)(2) in italics):

> (b) *Representatives to negotiate*. - (1) On request, a public school employer or at least two of its designated representatives shall meet and negotiate with at least two representatives of the employee organization that is designated as the exclusive negotiating agent for the public school employees in a unit of the county on all matters that relate to salaries, wages, hours, and other working conditions.

> (2) Except as provided in paragraph (3) of this subsection, a public school employer or at least two of its designated representatives may negotiate with at least two representatives of the employee organization that is designated as the exclusive negotiating agent for the public school employees in a unit of the county on other matters, *including due process for discipline and discharge,* that are mutually agreed to by the employer and the employee organization.

> (3) A public school employer may not negotiate the school calendar, the maximum number of students assigned to a class, or any other matter that is precluded by applicable law.

(2008 Repl. Vol.). Thus, "due process for discipline and discharge" was made a permissive subject of bargaining, but there was no reference to any substantive standard that a public school employer was required to meet in order to discipline or discharge a non-certified employee.

It was under that statutory framework that the State Board, in 2005, decided the case of *Harford County Board of Education v. Harford County Educational Services Council*, MSBE Opinion No. 05-24, which the County Board relies on so heavily in the July 3, 2012, Memorandum that it filed with the PSLRB in this case. In the Harford County Board of Education case, the State Board concluded that the phrase "due process for discipline and discharge" as used in Section 6-510(b)(2) encompassed only the procedural aspects of due process. *Id.* at 7. In reaching this conclusion, the State Board opined that a superintendent had the exclusive authority to appoint non-certified personnel pursuant to Section 6-201(c)(1), and the power to remove should be incident to the power to appoint. Based upon that interpretation, the State Board held that "the 'due process' reference in Section 6-510(b)(2) does not encompass substantive due process concerns. Rather, we find it specifically refers to the procedural aspects of due process." *Id.* at 7.

In 2009, exclusive representatives of non-certified employees approached the General Assembly in an effort to overturn the State Board's decision in the *Harford County Board of Education* case. That effort was successful. Senate Bill 569 amended Section 6-510(b) as follows (added language in Section 6-510(b)(1) in italics; deleted language in Section 6-510(b)(2) in brackets):

> (b)(1) On request, a public school employer or at least two of its designated representatives shall meet and negotiate with at least two representatives of the employee organization that is designated as the exclusive negotiating agent for the public school employees in a unit of the county on all matters that relate to salaries, wages, hours, and other working conditions, including the *discipline and discharge of an employee for just cause*.
>
> (2) Except as provided in paragraph (3) of this subsection, a public school employer or at least two of its designated representatives may negotiate with at least two representatives of the employee organization that is designated as the exclusive negotiating agent for

8

the public school employees in a unit of the county on other matters [including due process for discipline and discharge,] that are mutually agreed to by the employer and the employee organization.

In short, the State Board's decision in the *Harford County Board of Education* case was overturned by statute: the 2009 amendments limited a superintendent's authority to discipline and discharge non-certificated employees by making both the procedural and substantive aspects of the due process mandatory subjects of bargaining.

The testimony of the Maryland Association of Boards of Education ("MABE") recognized the implication of these amendments in the written testimony that it submitted to the Senate Finance Committee on March 5, 2009, in opposition to Senate Bill 569. MABE, speaking on behalf of "all of the state's boards of education," noted that Senate Bill 569 would:

> limit the superintendent's discretion to discipline or discharge support staff. MABE strongly opposes the mandated negotiation of the subjects of discipline and discharge of non-certificated staff. And yet again, this bill goes further. Senate Bill 569 would impose the standard of employee rights under disciplinary or termination actions to be "just cause." MABE has consistently opposed legislation proposing this standard of review for superintendent decisions regarding non-tenured, non-teaching staff.

[] If there was nothing more involved, our analysis could begin — and end — with Section 6-510(c)(1). But the County Board asserts that there is "more involved" — citing section 6-510(c)(3), which provides that:

> A public school employer may not negotiate the school calendar, the maximum number of students assigned to a class, or any matter that is precluded by applicable statutory law. (Emphasis added.)

In its July 2, 2012, submission to the PSLRB, the County Board contends that — notwithstanding the 2009 amendments — the State Board's 2005 interpretation of Section 6-201(c)(1) in the Harford County Board of Education case — *i.e.*, that the statutory authority of the county superintendent to "appoint clerical and other nonprofessional personnel"

9

includes the power to remove such personnel – is "applicable statutory law" that precludes the negotiation of a just cause standard for discharge. Accordingly, the County Board argues, Section 4.1 of the Master Agreement is unenforceable.

We need not for present purposes debate the merit of the State Board's interpretation of Section 6-201(c)(1). We acknowledge that the State Board has the authority to interpret the provisions of the Education Article other than those in Title 6, Subtitles 4 and 5. But the operative provision — *i.e.*, "any matter that is precluded by applicable statutory law" — appears in Title 6, Subtitle 5, and, as the County Board concedes, it is the PSLRB that has the authority to interpret the provisions of that Subtitle. This means that the PSLRB has jurisdiction to determine what does and does not constitute "applicable statutory law." We conclude that the State Board's interpretation of Section 6-201(c)(1) does not constitute "applicable statutory law" precluding the negotiation of "the discipline and discharge of an employee for just cause." The "applicable statutory law" for purposes of this negotiability dispute is Section 6-510(c)(1), and the clear and unambiguous language of that Section provides that "the discipline and discharge of an employee for just cause" is a mandatory subject of bargaining.

[] Conclusion

The PSLRB concludes that the topic of "discipline and discharge of an employee for just cause" is a mandatory subject of bargaining. In the context of this case, that means that Article 4.1 of the Master Agreement is enforceable, and the grievance involving that provision is subject to arbitration under Section 2.2 of the Master Agreement.

After the conflicting opinions were issued by the two State agencies, appellant and appellee each petitioned for judicial review, and each asked the circuit court to issue an order to enforce the opinion that was in its favor and grant appropriate injunctive relief. The circuit court found the board of education's arguments more persuasive, and entered orders affirming the interpretive ruling of the Maryland State Board of Education,

10

reversing the interpretive ruling of the Maryland Public School Labor Relations Board, and permanently enjoining the arbitration requested by appellant on behalf of the discharged nurse. The employee's labor representative appealed the circuit court's rulings.

## DISCUSSION

The two State agencies that issued conflicting rulings in this case share the distinctive characteristic of being granted broad statutory power to interpret statutes within their sphere of administration. In *Bd. of Ed. for Dorchester Co. v. Hubbard*, 305 Md. 774, 790-911 (1986), the Court of Appeals commented on the power of the State Board of Education, stating: "While administrative agencies generally may interpret statutes, as well as rule upon other legal issues, and while an agency's interpretation of a statute which it administers is entitled to weight, the paramount role of the State Board of Education in interpreting the public education law sets it apart from most administrative agencies." (Footnote omitted.) The *Hubbard* Court further noted, *id*. at 788:

> The State Board's broad authority specifically includes the power to interpret the provisions of the Education Article. Section 2–205(e) provides that:
>
> > "... [T]he State Board shall explain the true intent and meaning of the provisions of ... [the Education Article] ... within its jurisdiction ... [and] shall decide all controversies and disputes under these provisions."

But the Court of Appeals has also recognized that there is a limit to the judicial deference that will be granted to the State Board of Education's statutory interpretation.

11

"If the State Board's interpretation or application of [the statute at issue], in a particular situation, would clearly be contrary to the statute's plain meaning, a reviewing court must reject that interpretation." *Montgomery Co. Ed. Ass'n v. Bd. of Educ.*, 311 Md. 303, 309 (1987).

When the General Assembly created the Maryland Public School Labor Relations Board in 2010, it transferred a portion of the authority to interpret the Education Article from the State Board of Education to the newly created labor relations board. As part of that reassignment of authority, Educ. § 2-205(e)(4) was added. It states:

> (i) The Public School Labor Relations Board shall decide any controversy or dispute arising under Title 6, Subtitle 4 or Subtitle 5 of this article.

> (ii) A decision of the Public School Labor Relations Board is final.

The General Assembly also provided, in Educ. § 6-510(c)(5)(i): "If a public school employer and an employee organization dispute whether a proposed topic for negotiation is a mandatory, a permissive, or an illegal topic of bargaining, either party may submit a request for a decision in writing to the [Public School Labor Relations] Board for final resolution of the dispute." Further, Educ. § 6-807(a)(2) provides that, with respect to "matters covered under the provisions of Subtitles 4 and 5 of [Title 6]," the Public School Labor Relations Board "[s]hall decide controversies and disputes." The General Assembly also adopted a provision to make it clear that prior rulings of the State Board of Education were not binding on the labor relations board. Educ. § 6-807(d) states: "A prior

12

order, action, or opinion issued by the State Board before the enactment of this section may be considered as precedent in matters arising after the enactment of this section, but it is not binding on the [Public School Labor Relations] Board."

Although it seems plain to us that the present dispute turns on the question of whether a collective bargaining agreement could properly provide for arbitration of an employee's discharge, which is clearly a matter committed to the authority of the Public School Labor Relations Board to decide, the Board of Education for Howard County argues that the resolution of that question necessarily implicates the power of a superintendent to discharge an employee, and is therefore controlled by the State Board of Education's unwavering opinion that the superintendent's power to hire and fire nonprofessional personnel, pursuant to Educ. § 6-201(c)(1), overrides and invalidates any collective bargaining agreement to the contrary. We are not persuaded by the State Board's opinion on this issue. The General Assembly created the Public School Labor Relations Board for the express purpose of deciding such issues relative to the permissible scope of collective bargaining agreements. In our view, the plain language of the statutes enacted in 2009 and 2010 provides that agreements regarding the discharge of employees may be included in collective bargaining agreements, and if any doubt about that remained, the Public School Labor Relations Board was empowered to make the final decision regarding that topic.

In the Attorney General's amicus brief filed in this Court, the Attorney General described in detail the legislative history that led to the establishment of the Public School Labor Relations Board. Like the Attorney General, we are persuaded that the legislative history behind the statutes which created the labor relations board supports our reading of the statutes, and reflects a clear intent on the part of the General Assembly to have that agency, rather than the State Board of Education, be the final arbiter on any disagreement regarding the topics that can be covered in collective bargaining negotiations and agreements.

The State Board of Education's position of steadfastly refusing to recognize arbitration of disputes regarding the discharge of employees dates back to at least the early 1990s, when this Court addressed such a controversy in *Livers v. Board of Education*, 101 Md. App. 160 (1994). In May 1991, George Livers, a school custodian in Charles County, was arrested on drug charges. He was suspended without pay by the Charles County Board of Education pending the disposition of the charges. On June 11, 1991, the State *nolle prossed* Livers's drug charges. One week later, the Charles County Board of Education fired him for misconduct. Livers, a non-certificated employee, attempted to contest his firing by filing a grievance pursuant to the master agreement between his union and the Charles County Board of Education. The grievance proceeded through various phases, and eventually, the superintendent of the Charles County Board of Education affirmed Livers's dismissal. Livers and his union representative then sought

14

to arbitrate the matter. The Charles County Board of Education refused to participate in arbitration, and filed a complaint for declaratory judgment and stay of arbitration.

The arbitration was stayed, by consent, "until the State Board rendered a declaratory ruling as to the arbitrability of Livers's grievance." *Id*. at 163-64. The dispute was heard by an administrative law judge, who sided with Livers and recommended that the Charles County Board of Education be required to participate in arbitration. But the State Board of Education rejected the ALJ's recommendation, and ruled "that 'a public school employer may not bargain over the remedies or means by which a non-certificated employee may challenge a discipline or discharge decision.'" *Id*. at 164. Livers filed a petition for judicial review of the State Board's decision. After the Circuit Court for Charles County affirmed the State Board, Livers appealed to this Court. We began our analysis in *Livers* by noting:

> [Education Article] § 6-510(b) defines the scope of bargaining between public school employers and unions as to non-certificated employees:
>
> > On request, a public school employer or at least two of its designated representatives shall meet and negotiate with at least two representatives of the employee organization that is designated as the exclusive negotiating agent for the public school employees in a unit of the county **on all matters that relate to salaries, wages, hours, and other working conditions.**[2]

---

[2]The provisions that were addressed at the time of *Livers* in Educ. § 6-510(b) are currently codified in Educ. § 6-510(c)(1). The current iteration of § 6-510(c)(1) is the same

(continued...)

15

*Id*. at 164 (emphasis in *Livers*).

Citing *Montgomery Co. Ed. Ass'n v. Bd. of Educ., supra*, 311 Md. at 318, we observed that the Court of Appeals had held that "the State Board retains authority to determine matters of educational policy and that, as a consequence, such matters are not proper for negotiation between local school boards and union representatives." *Livers*, 101 Md. App. at 164.

Although Livers argued that the only way for him to get a fair hearing on a discipline or discharge decision "is through the grievance process and ultimately through arbitration," *id.* at 166, the State Board had ruled that those topics were "non-negotiable matters of educational policy within the exclusive province of the local school system." *Id*. We emphasized our deference to the State Board's decisions relative to education policy issues, and upheld the State Board's ruling pursuant to "this heightened deferential standard of review." *Id.* at 168.

We observed that "it is the State Board's task to determine a proper subject of negotiation, by balancing matters of educational policy against those of interest to school board employees." *Id.* at 167. We held that the "State Board did not act arbitrarily in

_____

[2](...continued)
as the *Livers*-era version of § 6-510(b), except that, where the former statute ended (". . . on all matters that relate to salaries, wages, hours, and other working conditions."), current § 6-510(c)(1) adds an express reference to the discharge of an employee: "including the discipline and discharge of an employee for just cause."

16

concluding that the procedures by which a non-certificated employee may grieve his or her dismissal is not subject to collective bargaining[.]" *Id.* at 169.

In 1999 and 2000, legislation was introduced in the General Assembly that "would have required the discipline and discharge of noncertificated employees to be negotiated under collective bargaining." The 1999 bill (HB 701) did not make it out of committee in the House of Delegates, and the 2000 bill (HB 451) passed in the House, but died in the Senate.

In the 2002 legislative session, Senate Bill 233 was introduced as an Administration Bill proposed by the Governor's office. According to its Fiscal Note,

> This Administration bill authorizes local boards of education and local school employee organizations representing certificated and noncertificated school personnel to negotiate over mutually agreeable matters other than salaries, wages, hours, and working conditions. Local boards, however, may not negotiate the school calendar, class sizes, or matters precluded by law. If either party declines to negotiate a permissive item, it cannot be subject to an impasse. The bill extends collective bargaining rights to noncertificated school employees who work for school systems on the Eastern Shore. **The discipline and discharge of noncertificated employees for just cause is also added to the subjects that may be bargained**.

(Emphasis added.)

In an explanatory memorandum accompanying the bill, the Administration wrote that one of the provisions of the bill would safeguard "due process for education support personnel employees in suspension and termination cases" because the bill "grants education support personnel employees the right to negotiate for due process protections

17

when they are disciplined or discharged.  This long-standing right that was struck down by the courts will be re-instituted."  The memorandum further explained:

> . . . Senate Bill 233 places "discipline and discharge" in the mandatory category of bargaining for education support personnel.  Unlike teachers, there are no established procedures in State law governing the discipline and discharge of E[ducation] S[upport] P[ersonnel] employees.  Such procedures traditionally were included in contract negotiations until 1992 when the State Board of Education ruled the practice illegal [in *Livers v. Board of Education of Charles County*, 6 Op. MSBE 407 (1992)]. While State law provides basic appeal rights, there are currently no due process rights for ESP employees who may be wrongfully terminated.  This legislation will require local school boards to negotiate discipline and discharge in good faith.

Testimony in opposition to SB 233 was presented to the Senate Finance Committee on behalf of the Dorchester County Board of Education, which took "no position" on those portions of SB 233 that would extend collective bargaining rights to non-certificated school personnel on the Eastern Shore, but opposed the balance of the bill.  That local board's testimony on the proposed extension of due process rights in discipline cases to non-certificated personnel was as follows:

> Contrary to what you may have been told, support personnel have fair due process rights for discipline and dismissal.  These include the right to notice of discipline charges filed against them, the right to respond to such charges, the right to challenge a disciplinary action by appealing to the superintendent, local school board, the State Board of Education, and even the courts, with the right to be represented throughout the appeal.  What the support personnel currently do not have, and, is a part of this bill, is the right, through the collective bargaining process, to take the appeal to an outside arbitrator.  The arbitrator's decision is binding and final.  The arbitrator would focus upon the employer/employee relationship, with no connection to or interest in the students or educational setting.  The State

18

Board, however, has historically placed great emphasis on the interest of the students when considering appeals.

> **The test case for the right of support personnel to have binding arbitration for discipline and dismissal, the Livers case, involved the dismissal of a Charles County employee.** His dismissal was upheld throughout all the due process stages, including MSTA's [the Maryland State Teachers Association's] appeal, on his behalf, that his case should have been decided by an arbitrator under collective bargaining. The appellate court did not support the MSTA position. **This bill is to legislatively overturn that decision.**

(Emphasis added.)

Also testifying in opposition was the Maryland Association of Boards of Education, "representing all the State's local boards of education[.]" In pertinent part, the Maryland Association of Boards of Education testified as follows:

> Another component of the proposed legislation also is troubling. It would require the negotiation of discipline and discharge of noncertificated employees for just cause. Currently, the discipline and discharge of noncertificated personnel is not a legal subject of collective bargaining. The issue was decided in the case of Livers v. Charles County Board of Education in the early 1990s, in which the State Board, and then the appellate courts, upheld the dismissal of Mr. Livers, a school custodian who had been arrested for drug offenses. The union demanded that the dismissal be taken to binding arbitration under the collective bargaining agreement. The State Board and courts ruled that the dismissal was not a legally negotiable topic, and thus the dismissal was not subject to arbitration. **MSTA has continually tried to get this ruling reversed through legislation, but the General Assembly has never passed what is commonly referred to as the "Livers" bill.**

> First, the assertion that due process rights should be provided to noncertificated personnel is not a justification for this legislative proposal. All categories of public employees are provided due process by law. In fact, in every school system in Maryland, every public school employee has due process rights that include being notified of any disciplinary charges

19

against him or her, having the right to respond to those charges, and being able to challenge a disciplinary decision by appealing the decision to the superintendent, school board, State Board, and even the courts.

Second, the standard of "just cause" applied to this discipline and discharge provision would essentially grant tenure to all support personnel and would impede prompt superintendent and board actions to remove employees from the school setting to ensure the safety and welfare of students. Thus, the General Assembly has always rejected the "Livers" proposal in order to preserve board and superintendent authority to ensure student safety and determine appropriate discipline of noncertificated employees in their school systems.

(Emphasis added.)

Testimony in opposition to SB 233 was also provided by the Harford County Public Schools, which also specifically referred to the *Livers* case:

Another concern is the "Livers" provision in the bill that would require the discipline and discharge of non-certificated employees to be negotiated. The contention that certain public employees have no due process is not true. In fact, every public school employee has due process rights that include being notified of any disciplinary charges against them; having the right to respond to those charges; and the right to appeal to the superintendent, the local and state school boards, as well as the court system. The "Livers" provision would diminish the authority of the Superintendent and Board to determine appropriate discipline of non-certificated employees in the Harford County Public School System. Present law allows employees to appeal disciplinary actions through the administrative appeals process.

Ultimately, despite opposition such as the above quoted excerpts, SB 233 passed the General Assembly in 2002 and was signed into law by the Governor. It was codified as (now-former) Educ. § 6-510(b). Prior to 2002, Educ. § 6-510(b) contained no subparts; it had provided:

20

(b)     On request, a public school employer or at least two of its designated representatives shall meet and negotiate with at least two representatives of the employee organization that is designated as the exclusive negotiating agent for the public school employees in a unit of the county on all matters that relate to salaries, wages, hours, and other working conditions.

Educ. § 6-510(b) (1978 Repl. Vol.).

Effective October 1, 2002, Educ. § 6-510(b) was revised to include three subparts.

Section 6-510(b)(1) was identical to the previous version of § 6-510(b) quoted above.

Added to the statute were subparts (2) - (4), which provided:

[(b)]   (2)     Except as provided in paragraph (3) of this subsection, a public school employer or at least two of its designated representatives may negotiate with at least two representatives of the employee organization that is designated as the exclusive negotiating agent for the public school employees in a unit of the county on other matters, **including due process for discipline and discharge**, that are mutually agreed to by the employer and the employee organization.

        (3)     A public school employer may not negotiate the school calendar, the maximum number of students assigned to a class, or any matter that is precluded by applicable statutory law.

        (4)     A matter that is not subject to negotiation under paragraph (2) of this subsection because it has not been mutually agreed to by the employer and the employee organization may not be raised in any action taken to resolve an impasse under subsection (d) of this section.

(Emphasis added.)

Consequently, as of October 1, 2002, "due process for discipline and discharge" was a legally permitted topic for negotiation. Educ. § 6-510(b) (2003 Supp., 2004 Repl.

21

Vol.). But, despite this change in the law, the State Board refused to alter its position that a superintendent's power of appointment implied a nondelegable power of termination which could not be modified by a contrary provision in a collective bargaining agreement. In *Harford County Board of Education v. Harford County Educational Services Council*, MSBE Op. No. 05-24, an opinion issued in 2005, the State Board decided that the Harford County Board of Education did not have to negotiate certain "just cause" language proposed by the union, because, the State Board of Education concluded, "negotiation of the causes for the imposition of discipline or for discharge of noncertificated employees is precluded by applicable statutory law, § 6-201 of the Education Article." The State Board's opinion in *Harford County* cited *Livers*, and took note of the specific statutory changes made since *Livers* — particularly the amendments to § 6-510(b) made in 2002 — but rejected the union's argument that the State Board should change its position. Instead, the State Board accepted the local board's argument that the "due process for discipline and discharge" language found in Educ. § 6-510(b)(2) referred only to procedural, not substantive, due process. In the end, the State Board relied upon its authority to "explain the true intent and meaning of the provisions of [the Education Article]," and simply ruled that § 6-201's general language trumped the legislative changes made to § 6-510(b) in response to *Livers*. The State Board reasserted its opinion that "grounds for discipline or discharge are an illegal subject of bargaining precluded by § 6-201(c) of the Education Article."

22

But in 2009, the General Assembly again amended § 6-510. HB 792 and SB 569 were signed into law on May 7, 2009, and became effective on October 1, 2009. These bills added language to § 6-510(b)(1) that made the discipline and discharge of an employee for just cause a mandatory subject of bargaining. *Cf.* 6-510(b)(2) (listing subjects that could be negotiated if there was mutual agreement to do so). The legislature specified that the purpose of this change was to "includ[e] the discipline and discharge of an employee for just cause among the matters a public school employer must meet and negotiate with a certain employee organization on request[.]" Laws of Maryland 2009, Chs. 284 & 285.[3]

In 2010, the legislature enacted the Fairness in Negotiations Act, which established the Public School Labor Relations Board. The proposed Fairness in Negotiations Act was

---

[3]Harford County Public Schools again opposed these bills. In its statement in opposition, it pointed out:

> As to the discipline issue, the State Board and courts ruled in the *Livers* case originating from Charles County in the '90s that this was not a negotiable topic and, thus, this individual's dismissal was not subject to arbitration. Although due process for discipline and discharge is now a *permissive* subject of bargaining, as a result of 2002 legislation, this bill would make it a mandatory subject and one ultimately grievable to arbitration.
>
> Such legislation is unnecessary inasmuch as these employees currently possess due process rights – able to challenge any disciplinary action to the superintendent, then to our board, then to the State Board of Education, and ultimately to the courts — all with the benefit of a right to a representative of their choice throughout each level of appeal.

(Emphasis in original.)

introduced in the House of Delegates as HB 243, and in the Senate as SB 590. The floor

report of the House Ways and Means Committee described HB 243 as follows:

> The authority of the State Board of Education to decide public school labor
> relations disputes and the authority of the State Superintendent of Schools
> to declare labor impasses are repealed. The bill also repeals the authority of
> the local boards of education to make final determinations of matters that
> have been the subject of negotiation.

The law creating the Public School Labor Relations Board was codified at Educ. §

6-801 *et seq*. This agency is charged, generally, with "administer[ing] and enforc[ing] the

provisions of Subtitles 4 and 5 of this title." Subtitle 4 of the Education Article deals with

organizations of employees who are required to hold a professional certification, and

Subtitle 5 deals with organizations of non-certificated employees, such as the school

nurse whose termination was the source of the present cases.

Even though Educ. § 6-510(c)(5) delegates to the Public School Labor Relations

Board the authority to determine the "final resolution" of whether a topic is properly

subject to collective bargaining, the State Board of Education ruled in this case that the

superintendent's power to terminate an employee who was hired pursuant to Educ. § 6-

201 remains nondelegable and therefore trumps the parties' Master Agreement, in which

the parties expressly agreed to include, at § 4.1, a prohibition on discharging non-

probationary employees without cause. As noted above, in its opinion rendered at the

request of the Board of Education of Howard County, the State Board of Education

"declare[d] that the true intent and meaning of [Educ.] § 6-201 is that the power to hire

24

and fire is non-delegable. If the superintendent's decision to terminate is subject to mandatory binding arbitration, it is our view that that would violate § 6-201."

In our view, the State Board focused on the wrong question. The issue in this case is not whether, in the absence of an agreement to the contrary, a superintendent's power of appointment includes the power to discharge an employee. Rather, the issue presented in this case is whether or not it was illegal, under applicable Maryland statutes, for the Board of Education of Howard County to enter into a collective bargaining agreement which expressly agreed that an employee's grievance is arbitrable. The answer to that question is found in Subtitle 5 of Title 6 of the Education Article, which is a matter within the jurisdiction of the Public School Labor Relations Board.

Section 6-510(a) provides that, if a public school employer and an employee organization "negotiate under this section," they shall do so in good faith, in a way as to honor and administer existing agreements, and shall "[m]ake every reasonable effort to conclude negotiations with a final written agreement in a timely manner[.]" They must also "[r]educe to writing the matters agreed on as a result of the negotiations." Here, after a period of negotiations, the parties entered into a Master Agreement, covering a three-year period. Article 2 of the Master Agreement provided for a grievance procedure, and specified the means by which an employee could file a grievance. Section 2.2C3 of the Master Agreement provided: "In the event that the employee and the Association are not satisfied with the decision at Step II [of the three-step grievance process], the grievance

25

may be submitted to [binding] arbitration . . .[.]" This is clearly allowed under Educ. § 6-510(b), which provides that negotiated agreements between a public school employer and an employee organization, of the sort entered into here, "may provide for binding arbitration of the grievances arising under the agreement that the parties have agreed to be subject to arbitration."

In this case, the school nurse's grievance asserted that she was "recommended for termination without cause." Because § 4.1 of the Master Agreement specifies that no non-probationary employee will be discharged without cause, and because the Master Agreement provides for a grievance procedure, the employee attempted to pursue the grievance procedure. In response, she was notified by appellee that it was denying her grievance "because it is an illegal subject of bargaining and thus not grievable." But, according to the Public School Labor Relations Board, the discipline and discharge of an employee for just cause is not an illegal subject of bargaining; it is mandatory subject of negotiation pursuant to Educ. § 6-510(c)(1).

In this appeal, appellee argues, in part, that Educ. § 6-510(c)(3) exempts from collective bargaining a matter prohibited by applicable statute, and, the school board asserts, Educ. § 6-201(c)(1) is such "applicable statutory law." Section 6-510(c)(3) provides: "A public school employer may not negotiate the school calendar, the maximum number of students assigned to a class, or any matter that is precluded by applicable statutory law." But the discipline and discharge of an employee for just cause was

26

*expressly made a mandatory subject of bargaining* in the subsection of "statutory law" immediately above: *i.e.*, in § 6-510(c)(1). We reject the appellee's argument that, when the legislature expressly included the discharge of an employee as a mandatory subject of collective bargaining, the legislature simultaneously intended to exclude that topic because of the general reference to "applicable statutory law." Instead, we agree with the conclusion of the Public School Labor Relations Board that, with respect to resolution of disputes regarding the topics that may be the subject of collective bargaining, the General Assembly has designated the labor relations board — and not the State Board of Education — as the agency empowered to decide what is a "matter that is precluded by statutory law." This phrase appears in Title 6, Subtitle 5, and the "final" resolution of disputes arising under that subtitle is expressly committed to the Public School Labor Relations Board in Educ. §§ 2-205(e)(4), 6-510(c)(5), and 6-807(a)(2).

Appellee also urges us to affirm the circuit court's rulings because interpretations of education law by the State Board of Education are entitled to heightened deference. But, as we noted above, courts are not required to defer to the interpretations of the agency if, as here, "the State Board[ of Education's] interpretation or application of [a statute], in a particular situation, would clearly be contrary to the statute's plain meaning," in which case "a reviewing court must reject that interpretation." *Montgomery County Educ. Ass'n, Inc., supra,* 311 Md. at 309.

27

Appellee also argues that the general, earlier-adopted Educ. § 6-201 controls over the more specific, later-adopted § 6-510, citing *State v. Harris*, 327 Md. 32 (1992), for the "fundamental principle that the law does not favor repeals by implication" and that a "later statute will not be held to repeal an earlier statute by implication unless there is some express reference to the earlier statute." 327 Md. at 39. But *Harris* also makes plain that, "if two statutes contain an irreconcilable conflict, the statute whose relevant substantive provisions were enacted most recently may impliedly repeal any conflicting provision of the earlier statute." That principle appears applicable here. But, in any event, we do not need to find that Educ. § 6-201 has been repealed in order to accept the opinion of the Public School Labor Relations Board regarding the arbitrability of disputes regarding the discharge of employees.

Finally, we note that, in deciding the issues presented in this appeal, we have given no weight to the "sunset" provision that was included in the statutes which created the Public School Labor Relations Board. Although we recognize that, in the absence of further action by the General Assembly, the Fairness in Negotiations Act will be abrogated and of no further force and effect after June 30, 2015, we agree with the assertion in the amicus brief of the Attorney General that the current powers of the agency "are by no means diminished or placed in doubt by the 'sunset' provision." According to the Attorney General: "This legislative practice [of requiring periodic review of State agencies] has long been institutionalized in the form of the Maryland Program Evaluation

28

Act, Md. Code Ann., State Gov't §§ 8-401 to 8-413. . . . In the most recent supplement to the State Government Article, § 8-403(b) lists 56 agencies that are slated for sunset evaluation." Even though the Public School Labor Relations Board does not appear on the list cited by the Attorney General, we agree with the general assertion that, until the sun has finally set on an agency, the agency is fully empowered to exercise the authority granted to it by the General Assembly.

For the reasons set forth above, the Circuit Court for Howard County erred in reversing and vacating the Public School Labor Relations Board's decision, erred in affirming the interpretation of the State Board of Education, and erred in granting appellee a permanent injunction preventing the arbitration requested by appellant from going forward. We will reverse the order of the circuit court in case no. 13-C-12-090823, and dissolve the injunction. We will also reverse the order of the circuit court in case no. 13-C-12-91545, order that the decision of the Public School Labor Relations Board in Case No. N 2012-01 be affirmed, and order that Opinion No. 12-28 of the State Board of Education be reversed.

> **JUDGMENT OF THE CIRCUIT COURT FOR HOWARD COUNTY IN 13-C-12-090823 REVERSED. INJUNCTION ISSUED IN THAT CASE IS DISSOLVED. JUDGMENT OF THE CIRCUIT COURT FOR HOWARD COUNTY IN 13-C-12-91545 IS REVERSED. CASE REMANDED TO THAT COURT WITH INSTRUCTIONS FOR THE CIRCUIT COURT TO ENTER APPROPRIATE ORDERS REVERSING**

29

**OPINION NO. 12-28 OF THE MARYLAND STATE BOARD OF EDUCATION AND AFFIRMING THE DECISION OF THE PUBLIC SCHOOL LABOR RELATIONS BOARD IN CASE NO. N 2102-01. COSTS TO BE PAID BY APPELLEE.**