*Board of Education of Howard County v. Howard County Education Association-ESP, Inc.*, No. 18, September Term 2015

**STATUTORY CONSTRUCTION — EDUCATION LAW ARTICLE —** The Public School Labor Relations Board has the exclusive authority to decide the legality of a term in a collective bargaining agreement. Section 6-510(c)(5)(i) provides that the Public School Labor Relations Board, not the State Board of Education, is the agency with the authority to decide whether a topic of negotiation is an illegal subject of a collective bargaining agreement. In this case, the Public School Labor Relations Board reasonably concluded that a binding arbitration provision in a collective bargaining agreement was not an illegal topic bargaining, and therefore, the arbitration provision was enforceable.

Circuit Court for Howard County
Case No. 13-C-12-090823
Case No. 13-C-12-091545
Argued: October 6, 2015

IN THE COURT OF APPEALS
OF MARYLAND

No. 18

September Term, 2015

BOARD OF EDUCATION OF
HOWARD COUNTY

v.

HOWARD COUNTY EDUCATION
ASSOCIATION-ESP, INC.

Barbera, C.J.,
Battaglia
Greene
Adkins
McDonald
Watts
Harrell, Jr., Glenn T. (Retired, Specially Assigned),

JJ.

Opinion by Barbera, C.J.

Filed: December 21, 2015

We decide in this case whether a local public school superintendent's decision to terminate a "noncertificated" employee—that is, an employee who does not have a professional teaching certificate issued by the Maryland State Board of Education—is a proper subject of binding arbitration pursuant to a collective bargaining agreement. In order to answer that question we must resolve important questions concerning the interpretation and interplay of statutes affecting two State agencies, the Maryland State Board of Education and the Public School Labor Relations Board.

We shall answer those important questions and, applying those answers to the ultimate question posed by this case, we conclude that the termination of a noncertificated employee is a proper subject of binding arbitration pursuant to a collective bargaining agreement.

I.

The parties to this dispute are Petitioner Board of Education of Howard County ("Howard County Board") and Respondent Howard County Education Association-ESP, Inc. ("Association"). The Association is the exclusive bargaining representative of non-supervisory, noncertificated employees of the Howard County Public School System. In the present case, the Association is acting on behalf of a school nurse who was terminated by the Howard County Public School System in January 2012.

The Association and the Howard County Board negotiated a collective bargaining agreement ("CBA") in July 2010. Article 4, entitled "Employee Rights," provides in Section 4.1 that "[n]o employee will be discharged without cause." Article 2 provides for a grievance process. Article 2 defines "grievance" as a dispute "involving the express

provisions of the terms of" the CBA and establishes a three-step procedure.[1]  In the present

case, the school nurse opted to challenge her termination by way of the grievance process.

---

[1]  The three steps of the grievance procedure are:

Step I - Between the Grievant and his/her representative, and/or the Association, at the request of the grievant, and the employee's immediate supervisor and/or his/her designated representative.  The immediate supervisor shall schedule a meeting with the employee within seven (7) week days after receiving the written statement from the employee.  The immediate supervisor shall respond to the employee in writing within eight (8) week days as to his/her disposition of the grievance.  In the event that the grievant is not satisfied with the supervisor's response, he/she may appeal to Step II.

Step II - Between the Grievant and the Superintendent's designee.  Within eight (8) week days of the receipt of the supervisor's response (Step I), the employee may appeal the immediate supervisor's decision to the Superintendent's designee.  The appeal must be in writing.  The Superintendent's designee shall arrange for a meeting with the employee within ten (10) week days after receipt of the written appeal.  The immediate supervisor may be present at a Step II hearing at the discretion of the Superintendent/designee.

The Superintendent designee shall provide a written decision pursuant to the grievance within seven (7) week days after completion of the meeting.

Step III - Submitted to Arbitration - In the event that the employee and the Association are not satisfied with the decision at Step II, the grievance may be submitted to arbitration under the Voluntary Labor Arbitration Rules of the American Arbitration Association within 40 calendar days from the date the decision at Step II was forwarded via certified mail.  Grievances filed by the Association are not subject to binding arbitration.  The arbitrator's decision shall be final and binding on all the parties.

The jurisdiction and authority of the arbitrator and any opinion of award shall be confined to the express provisions of this Agreement at issue between the Association and the Board.  The arbitrator shall not add to, alter from, amend, or modify any provision/s of this Agreement.  The costs of the aforementioned arbitration shall be equally divided between the Association and the Board.

2

Upon completion of Step I she proceeded to Step II. At that juncture, the Superintendent of the Howard County Public School System, acting through a designee, denied the grievance on the ground that a superintendent's decision to terminate a noncertificated employee is an illegal subject of collective bargaining and therefore not subject to the grievance process set forth in the CBA. The Association, on behalf of the school nurse, made a demand for arbitration, which in Step III of the grievance process provides that "[t]he arbitrator's decision shall be final and binding on all the parties."

*The Litigation*

Upon receipt of the Association's demand, the Howard County Board filed a Motion for Injunctive Relief in the Circuit Court for Howard County, seeking to enjoin the arbitration. The Howard County Board argued that the final decision on the termination of a noncertificated employee is committed to the exercise of the superintendent's authority; therefore, a dispute concerning the termination of that employee cannot be the subject of binding arbitration. The Association opposed the injunction.

The Circuit Court granted the Howard County Board preliminary injunctive relief and entered an order staying the arbitration to give both parties the opportunity to request an opinion from either or both the Maryland State Board of Education ("State Board") and the Public School Labor Relations Board ("PSLRB"). The Howard County Board sought an opinion from the State Board. The Association sought an opinion from the PSLRB.

The State Board and the PSLRB issued conflicting opinions. We later detail the reasoning of the respective agencies. For now, however, it suffices to note that the State Board concluded that a provision of the Education Article authorizing the county school

3

superintendent to make hiring decisions also, albeit impliedly, commits to the superintendent the exclusive authority to terminate, thereby rendering illegal the binding arbitration provision of the CBA.  The PSLRB came to the opposite conclusion by reference to other provisions of the Education Article that permit binding arbitration of matters relating to the discipline and discharge of noncertificated employees.  Therefore, according to the PSLRB, the binding arbitration provision of the CBA is not illegal.

Each party petitioned the Circuit Court for Howard County for judicial review of the respective opinions of the State Board and the PSLRB, and each party sought, in response to the other's petition, an order to enforce the opinion of the agency that ruled in its favor.[2]  The Circuit Court, agreeing with the State Board's determination, entered orders that affirmed the decision of the State Board, reversed the decision of the PSLRB, and permanently enjoined the arbitration.

The Association appealed to the Court of Special Appeals, which reversed the judgments of the Circuit Court.  *Howard Cty. Educ. Ass'n-ESP, Inc. v. Bd. of Educ. of Howard Cty.*, 220 Md. App. 282, 284 (2014).  The intermediate appellate court concluded in a thorough and well analyzed opinion that the State Board's opinion would "clearly be contrary to the statute's plain meaning"; therefore, deference may not be afforded to the State Board in this case.  *Id.* at 307 (internal quotation marks omitted).  The Court of Special Appeals held that the PSLRB, not the State Board, is the entity with the jurisdiction to

---

[2] The Howard County Board's petition and the Association's petition for judicial review were consolidated and assigned Case No. 13-C-12-091545.  The Howard County Board's petition for injunctive relief was assigned Case No. 13-C-12-090823.

4

resolve the dispute; moreover, the PSLRB reasonably concluded that the sections of the Education Article concerning collective bargaining permit a local board to be bound to an agreement containing an arbitration provision for grievance matters. *Id.* at 305-06. The Howard County Board petitioned this Court for review.

We granted the Howard County Board's petition for writ of certiorari to address two questions,[3] which we have combined into one: Does the PSLRB have the exclusive authority to decide the legality of a term in a collective bargaining agreement that provides for arbitration of a county superintendent's decision to discharge a noncertificated employee?

## II.

A State agency's declaratory ruling "is subject to judicial review in the same manner as provided for a 'contested case' decided under the Administrative Procedure Act." *Potomac Valley Orthopaedic Assocs. v. Md. State Bd. of Physicians*, 417 Md. 622, 635 (2011). When, as here, the administrative rulings at issue do not involve any disputed facts, this Court's "role is limited to determining . . . if the administrative decision is premised upon an erroneous conclusion of law." *Id.* (alteration in original) (internal quotation marks

---

[3] Petitioner presents the following questions:

> Whether the PSLRB must apply the State Board's interpretation of statutes within the State Board's jurisdiction when exercising its authority to determine if a proposed subject of collective bargaining is illegal because it is precluded by applicable statutory law.

> Whether conflicting interpretations of § 6-201(c)(1) and § 6-510(c)(1) can be reconciled.

5

omitted). In conducting that inquiry, we generally afford "considerable weight" to "the agency's interpretation and application of the statute which the agency administers." *Id.* at 635-36 (internal quotation marks omitted). This Court, however, is not bound by an agency's decision that is "premised solely upon an erroneous conclusion of law." *Id.* at 636 (internal quotation marks omitted).

This Court has recognized that "the paramount role of the State Board of Education in interpreting the public education law sets it apart from most administrative agencies." *Montgomery Cty. Educ. Ass'n v. Bd. of Educ. of Montgomery Cty.*, 311 Md. 303, 309 (1987) (internal quotation marks omitted). We therefore accord considerable deference to an opinion of the State Board interpreting public education law. *See Balt. City Bd. of Sch. Comm'rs v. City Neighbors Charter Sch.*, 400 Md. 324, 343 (2007). Such deference to the State Board's decision, however, is not absolute; rather, a reviewing court must reject a decision of the State Board, or, for that matter, of the PSLRB, if either agency's decision "would clearly be contrary to the statute's plain meaning." *See Montgomery Cty. Educ. Ass'n*, 311 Md. at 309.

When, as in the present case, a party to a collective bargaining agreement has sought judicial intervention to stay arbitration, the court's role is limited. *Balt. Cty. Fraternal Order of Police Lodge No. 4 v. Baltimore County*, 429 Md. 533, 549 (2012). We have said that, "[i]f one could decide that [the] grievance was arbitrable without interpreting the underlying [collective bargaining agreement] or addressing the merits of [the party's] claims," then arbitrability is "an issue for the court to decide initially." *Id*. at 553.

III.

6

Before delving further into the respective opinions of the State Board and the PSLRB, it is helpful to review the legislative grant of authority to each of them. The General Assembly created the PSLRB in 2010. Since then, the Education Article has contained multiple references to the division of authority between the PSLRB and the State Board. We begin with § 2-205. Md. Code (2010, 2014 Repl. Vol., 2015 Supp.), § 2-205 of the Education Article.[4]

Section 2-205(e) delineates the respective powers and duties of the State Board and the PSLRB. Subsections (e)(1), (2) and (3) address the authority of the State Board:

> (1) . . . [T]he State Board shall explain the true intent and meaning of the provisions of:
>      (i) This article that are within its jurisdiction[.]
> (2) Except as provided in paragraph (4) of this subsection and in Title 6, Subtitles 4 and 5 of this article, the [State] Board shall decide all controversies and disputes under these provisions.
> (3) The decision of the [State] Board is final.

Subsection (e)(4) in turn provides:

>      (i) The Public School Labor Relations Board shall decide any controversy or dispute arising under Title 6, Subtitle 4 or Subtitle 5 of this article.
>      (ii) A decision of the Public School Labor Relations Board is final.

Read together, these subsections expressly transfer from the State Board to the PSLRB the authority to decide any controversy or dispute arising under Subtitles 4 and 5, i.e., the collective bargaining subtitles of Title 6.

Title 6 is entitled "Teachers and Other Personnel." Section 6-510(c)(5)(i) provides that,

---

[4] Hereafter all statutory references are to the Education Article.

7

[i]f a public school employer and an employee organization dispute whether a proposed topic for negotiation is a mandatory, a permissive, or an illegal topic of bargaining, either party may submit a request for a decision in writing to the [PSLRB] for a final resolution of the dispute.

The General Assembly added, as well, § 6-807(a)(2), which provides that the PSLRB "[s]hall decide controversies and disputes" concerning matters covered by Title 6, Subtitle 4 (providing for collective bargaining between public school employers and certificated employees) and Subtitle 5 (providing for collective bargaining between public school employers and noncertificated employees). And in § 6-807(d), the General Assembly provided that "a prior order, action or opinion issued by the State Board before the enactment of this section may be considered as precedent in matters arising after the enactment of this section, but it is not binding on the [PSLRB]."

Particularly relevant to the present case are several additional subsections of § 6-510. Subsection (b) states that a negotiated agreement between the public school employer and the employee organization "may provide for binding arbitration of the grievances arising under the agreement that the parties have agreed to be subject to arbitration." Subsection (c)(1) provides that representatives of the public school employer and the employee organization "shall meet and negotiate . . . on all matters that relate to . . . working conditions, *including the discipline and discharge of an employee for just cause.*" (Emphasis added). Subsection (c)(3) provides: "A public school employer may not negotiate the school calendar, the maximum number of students assigned to a class, or *any matter that is precluded by applicable statutory law.*" (Emphasis added). Subsection (c)(5)(i) provides that, "[i]f a public school employer and an employee organization dispute

8

whether a proposed topic for negotiation is a mandatory, a permissive, or an illegal topic of bargaining, either party may submit a request for a decision in writing to the [PSLRB] for final resolution of the dispute."

*The Agencies' Opinions*

The State Board recognized in its opinion in the present case[5] that the school nurse challenged her termination by resort to Section 4.1 of the CBA (providing that "[n]o employee will be discharged without cause") and Article 2 of the CBA (providing that, at Step III of the grievance process, a dissatisfied employee is entitled to submit the dispute to binding arbitration). The State Board further acknowledged that, pursuant to § 6-510(c)(5), the PSLRB is authorized to decide whether a "proposed topic for negotiation is a mandatory, a permissive, or an illegal topic of [collective] bargaining." The State Board concluded nonetheless that it "retain[s] jurisdiction to explain the true intent and meaning of all other sections of the Education Article," including § 6-201, which addresses the superintendent's power to appoint noncertificated employees.

The State Board looked specifically to § 6-201(c)(1), which provides: "Except in Worcester County and Baltimore City, the county superintendent shall appoint clerical and other nonprofessional personnel." The State Board concluded that "the true intent and meaning of § 6-201 is that the power to hire and fire is non-delegable"; consequently, "[i]f the superintendent's decision to terminate is subject to mandatory binding arbitration," then such action "would violate" § 6-201(c)(1) of the Education Article.

---

[5] *In re: Petition for Declaratory Ruling*, MSBE Op. No. 12-28 (2012).

9

In so deciding, the State Board essentially reaffirmed the position it had taken in an earlier opinion, *Harford County Board of Education v. Harford County Educational Services Council*, MSBE Op. No. 05-24 (2005) ("the 2005 Harford County Board decision"). In that 2005 opinion, the State Board determined that the express authority granted in § 6-201(c)(1) to the county superintendent to appoint noncertificated personnel carries with it the implied authority to discharge such personnel. Relying upon the 2005 Harford County Board decision, about which we shall say more, *infra*, the State Board reemphasized in its opinion in the present case that under § 6-201 the superintendent's "power to hire and fire is non-delegable." The State Board adhered in the present case to its reasoning in its 2005 decision, *notwithstanding* the State Board's recognition that since 2009 the General Assembly has provided for mandatory negotiation of just cause for employee discharge.

The PSLRB came to the opposite conclusion in its opinion.[6] The PSLRB noted its jurisdiction to decide the legality of a topic of negotiation, referring in particular to the authority granted to the PSLRB in § 6-510(c)(5)(i) to resolve any dispute between "a public school employer and an employee organization" concerning "whether a proposed topic for negotiation is . . . an illegal topic of bargaining."

The PSLRB thoroughly traced the legislative history of Maryland's collective bargaining subtitle, including the 2009 amendments to what was then § 6-510(b) and now

---

[6] *In the Matter of: Howard Cty. Educ. Ass'n – Educ. Support Prof'ls (ESP) v. Bd. of Educ. of Howard Cty.*, PSLRB Op. No. N-2012-01 (Aug. 2, 2012).

is renumbered at § 6-510(c), which effectively overruled the State Board's 2005 Harford County Board decision. The PSLRB described the 2009 amendments to § 6-510(c)(1) as "limit[ing] a superintendent's authority to discipline and discharge non-certificated employees by making both the procedural and substantive aspects of due process mandatory subjects of bargaining."[7]

Given the legislative history of § 6-510(c), the PSLRB wrote: "If there was nothing more involved, our analysis could begin—and end—with Section 6-510(c)(1)." The PSLRB noted that it nevertheless would respond to the argument raised in a memorandum the Howard County Board had sent to the PSLRB. In that memorandum, the Howard County Board raised § 6-510(c)(3), which provides that "A public school employer may not negotiate . . . *any matter that is precluded by applicable statutory law.*" The Howard County Board asserted that § 6-510(c)(3) essentially trumped § 6-510(c)(1), which provides that the parties are required to negotiate the "discharge of an employee for just cause." The Howard County Board recounted the State Board's interpretation of § 6-201(c)(1) (providing the county superintendent with the power to appoint noncertificated employees). The State Board interpreted that section (consistent with that Board's adherence to its 2005 Harford County Board decision) as committing to the superintendent the sole authority to hire and discharge noncertificated employees. Relying on that

---

[7] For a further examination of the PSLRB's opinion in the present case, see the opinion of the Court of Special Appeals, which quotes extensively and approvingly from the opinion of the PSLRB, *Howard County Education Ass'n-ESP, Inc. v. Board of Education of Howard County*, 220 Md. App. 282, 287-92 (2014).

interpretation, the Howard County Board argued that § 6-201(c)(1) is "applicable statutory law" that pursuant to § 6-510(c)(3) precludes the negotiation of an arbitration clause to review a superintendent's termination of an employee, thereby rendering the arbitration clause in this case "unenforceable."

The PSLRB made short work of that aspect of the Howard County Board's argument:

> We need not for present purposes debate the merit of the State Board's interpretation of Section 6-201(c)(1). We acknowledge that the State Board had the authority to interpret the provisions of the Education Article other than those in Title 6, Subtitles 4 and 5. But the operative provision—*i.e.*, "any matter that is precluded by applicable statutory law"—appears in Title 6, Subtitle 5, and, as the County Board concedes, it is the PSLRB that has the authority to interpret the provisions of that Subtitle. This means that the PSLRB has jurisdiction to determine what does and does not constitute "applicable statutory law." We conclude that the State Board's interpretation of Section 6-201(c)(1) does *not* constitute "applicable statutory law" precluding the negotiation of "the discipline and discharge of an employee for just cause." The "applicable statutory law" for purposes of this negotiability dispute is Section 6-510(c)(1), and the clear and unambiguous language of that Section provides that "the discipline and discharge of an employee for just cause" is a mandatory subject of bargaining.
>
> . . . .
>
> In the context of this case, that means that Article 4.1 of the [CBA] is enforceable, and the grievance involving that provision is subject to arbitration under Section 2.2 of the [CBA].

IV.

The opinions of the two agencies discuss, to a greater or lesser degree, the General Assembly's amendments of the Education Article between 2002 and 2010, which led ultimately to the creation of the PSLRB, among other changes to the Education Article. Certain of those amendments can be traced back to a 1994 decision of the Court of Special

12

Appeals, *Livers v. Board of Education of Charles County*, 101 Md. App. 160 (1994). The Court of Special Appeals was presented in *Livers* with generally the same question as the one before us in the present case, but the procedural posture and statutory law differed at that time. *See id.* at 162.

Appellant *Livers* was employed as a building equipment technician for the Charles County Board of Education until his dismissal in 1991. The local branch of the American Federation of State, County, and Municipal Employees sought to arbitrate the dismissal on behalf of Livers, pursuant to a negotiated agreement between it and the County Board of Education. When the County Board refused to submit to arbitration, Livers submitted to the State Board the question of whether the County Board was required to participate in the grievance arbitration. The State Board ruled that Livers's termination was an illegal topic of bargaining. *Id.*

The Circuit Court for Charles County, on judicial review of the State Board's ruling, agreed with the State Board, as did the Court of Special Appeals. *Id.* at 168. The State Board had reasoned that "discipline or discharge decision[s] are non-negotiable matters of educational policy within the exclusive province of the local school system." *Id.* at 166. In affirming the State Board's decision, the Court of Special Appeals noted that it is the State Board's "task to determine a proper subject of negotiation" and the State Board's decision was not arbitrary. *Id.* at 167, 169. The *Livers* court quoted the then-extant version of § 6-510(b), which at the time *Livers* was decided provided for negotiation "*on all matters that relate to salaries, wages, hours, and other working conditions*" but not for matters of discipline or discharge of employees. *See id.* at 164.

13

The General Assembly effectively overruled *Livers* in 2002 by amending the collective bargaining provisions of the Education Article to create mandatory, permissive, and illegal subjects of bargaining.[8] The General Assembly added to § 6-510(b) the italicized language below:

> (2) Except as provided in paragraph (3) of this subsection, a public school employer or at least two of its designated representatives may negotiate with at least two representatives of the employee organization that is designated as the exclusive negotiating agent for the public school employees in a unit of the county on other matters, *including due process for discipline and discharge*, that are mutually agreed to by the employer and the employee organization.

The 2002 amendment permitted parties to negotiate due process for discipline and discharge but did not clarify whether this topic of negotiation encompassed both procedural and substantive due process for discipline and discharge.

Against the backdrop of the 2002 statutory framework, the State Board issued its 2005 Harford County Board decision. The State Board, citing *Livers*, determined that a superintendent had the sole authority to appoint noncertificated employees pursuant to § 6-201(c)(1), and incident to the power to appoint is the power to dismiss. Applying that interpretation, the State Board decided that the reference to due process in then-extant § 6-510(b)(2) addresses only the procedural aspects of due process, not substantive due process.

---

[8] The legislative history behind the 2002 amendments to § 6-510 leaves no doubt that those amendments were intended to overrule *Livers*. For a thorough discussion of that history, from the statutory framework of the Education Article that led to *Livers* to the 2010 amendments to the Education Article, which we further address *infra*, see the Court of Special Appeals's discussion in the present case. 220 Md. App. at 295-304.

14

In 2009, the General Assembly, in response to efforts to overturn the State Board's 2005 Harford County Board decision, amended § 6-510(b) to add in (b)(1) the language we have italicized and to delete in (b)(2) the language we have bracketed:

> (b)(1) On request, a public school employer or at least two of its designated representatives shall meet and negotiate with at least two representatives of the employee organization that is designated as the exclusive negotiating agent for the public school employees in a unit of the county on all matters that relate to salaries, wages, hours, and other working conditions, *including the discipline and discharge of an employee for just cause.*
> (2) Except as provided in paragraph (3) of this subsection, a public school employer or at least two of its designated representatives may negotiate with at least two representatives of the employee organization that is designated as the exclusive negotiating agent for the public school employees in a unit of the county on other matters[, including due process for discipline and discharge,] that are mutually agreed to by the employer and the employee organization.

The legislative history behind these 2009 amendments, as summarized in the Court of Special Appeals's opinion,[9] underscores that the purpose of the amendments was to limit

---

[9] The Court of Special Appeals recounted that legislative history:

> The testimony of the Maryland Association of Boards of Education ("MABE") recognized the implication of these amendments in the written testimony that it submitted to the Senate Finance Committee on March 5, 2009, in opposition to Senate Bill 569. MABE, speaking on behalf of "all of the state's boards of education," noted that Senate Bill 569 would:
>> limit the superintendent's discretion to discipline or discharge support staff. MABE strongly opposes the mandated negotiation of the subjects of discipline and discharge of non-certificated staff. And yet again, this bill goes further. Senate Bill 569 would impose the standard of employee rights under disciplinary or termination actions to be "just cause." MABE has consistently opposed legislation proposing this standard of review for superintendent decisions regarding non-tenured, non-teaching staff.

220 Md. App. at 291 (citation omitted).

15

"a superintendent's authority to discipline and discharge non-certificated employees by making both the procedural and substantive aspects of due process mandatory subjects of bargaining." 220 Md. App. at 291 (citation omitted).

Finally, in 2010, the General Assembly enacted The Fairness in Negotiations Act to create the PSLRB and revise the collective bargaining statutes. *See* Laws of Maryland, ch. 590 (2010). Subsection (b) of § 6-510 was renumbered as subsection (c) but the mandatory topic at issue in this case did not change in substance: subsection (c)(1) provides the mandatory topics of negotiation; (c)(2) specifies the permissive topics of negotiation; and (c)(3) prescribes the illegal topics of negotiation. The 2010 amendment also specified in § 6-510(c)(5) that the PSLRB would resolve any dispute concerning the legality of a topic of negotiation. These provisions expressly grant to the PSLRB the jurisdiction to decide disputes arising under Subtitles 4 and 5 of Title 6 of the Education Article.

V.

The parties' arguments have remained essentially the same throughout the litigation. Each party relies upon the agency opinion that supports that party's side of the dispute. Now, as before the Circuit Court and the Court of Special Appeals, Petitioner Howard County Board advances an interpretation of the Education Article that is entirely consistent with the opinion of the State Board. Respondent Association adheres to the opinion of the PSLRB, just as it did before the Circuit Court and the Court of Special Appeals. We conclude, as did the Court of Special Appeals, that the PSLRB properly resolved the relevant question to be decided in this case.

We agree with the following observation of our colleagues on the Court of Special

16

Appeals: "[I]t seems plain to us that the present dispute turns on the question of whether a collective bargaining agreement could properly provide for arbitration of an employee's discharge, which is clearly a matter committed to the authority of the [PSLRB] to decide." 220 Md. App. at 294-95. We further agree with the Court of Special Appeals that what "seems plain" is in fact the answer to the question posed by this case. We arrive at that answer by application of the rules of statutory construction.

The cardinal rule of statutory construction is to effectuate the intent of the Legislature. *Chesapeake Charter, Inc. v. Anne Arundel Cty. Bd. of Educ.*, 358 Md. 129, 135 (2000). We begin by giving effect to the plain and unambiguous meaning of the statute. *Id.* If the plain language is "consistent with the statute's goals and apparent purpose, our inquiry normally ends with that language." *Id.* We must "interpret the statute as a whole, where the statute to be construed is a part of a statutory scheme[;] the legislative intention is not determined from that statute alone, rather it is to be discerned by considering it in light of the statutory scheme." *Blitz v. Beth Isaac Adas Israel Congregation*, 352 Md. 31, 40 (1998) (alterations and internal quotation marks omitted); *see also City of Balt. Dev. Corp. v. Carmel Realty Assocs.*, 395 Md. 299, 318 (2006). The statutory language should be read so that no word or phrase renders any part of it "meaningless, surplusage, superfluous, or nugatory." *Blitz*, 352 Md. at 40. Even if the plain language is unambiguous, courts may refer to the legislative history to ensure their interpretation is correct. *Bd. of Educ. of Balt. Cty. v. Zimmer-Rubert*, 409 Md. 200, 215 (2009).

We conclude, as the Court of Special Appeals evidently did, that there is no

17

ambiguity in any of the provisions of the Education Article that apply to and inform the decision in this case. Each section we have examined appears to us quite plain both on its face and when considered in relation to the other relevant sections of the Education Article. Moreover, the evident legislative purpose of the amendments to that Article, in 2002, 2009, and 2010, is readily confirmed by the considerable legislative history of the amendments to the collective bargaining provisions of the Article.

We cannot improve upon the excellent legal analysis of the Court of Special Appeals, nor do we part company with that Court's legal conclusions in this case. The Honorable Timothy E. Meredith, writing for the Court of Special Appeals, concluded:

> [T]he State Board focused on the wrong question. The issue in this case is not whether, in the absence of an agreement to the contrary, a superintendent's power of appointment includes the power to discharge an employee. Rather, the issue presented in this case is whether or not it was illegal, under applicable Maryland statutes, for the Board of Education of Howard County to enter into a collective bargaining agreement which expressly agreed that an employee's grievance is arbitrable. The answer to that question is found in Subtitle 5 of Title 6 of the Education Article, which is a matter within the jurisdiction of the [PSLRB].
>
> Section 6-510(a) provides that, if a public school employer and an employee organization "negotiate under this section," they shall do so in good faith, in a way as to honor and administer existing agreements, and shall "[m]ake every reasonable effort to conclude negotiations with a final written agreement in a timely manner . . . ." Here, after a period of negotiations, the parties entered into [the CBA], covering a three-year period. Article 2 of the [CBA] provided for a grievance procedure, and specified the means by which an employee could file a grievance. Section 2.2C3 of the [CBA] provided: "In the event that the employee and the Association are not satisfied with the decision at Step II . . . the grievance may be submitted to [binding] arbitration . . . ." This is clearly allowed under Educ. § 6-510(b), which provides that negotiated agreements between a public school employer and an employee organization, of the sort entered into here, "may provide for binding arbitration of the grievances arising under the agreement that the parties have agreed to be subject to arbitration."

18

. . . .

> We reject the [Howard County Board's] argument that, when the legislature expressly included the discharge of an employee as a mandatory subject of collective bargaining, the legislature simultaneously intended to exclude that topic because of the general reference to "applicable statutory law." Instead, we agree with the conclusion of the [PSLRB] that, with respect to resolution of disputes regarding the topics that may be the subject of collective bargaining, the General Assembly has designated the [PSLRB]—and not the State Board of Education—as the agency empowered to decide what is a "matter that is precluded by statutory law."

220 Md. App. at 305-07.

We adopt in full the reasoning of the Court of Special Appeals. Accordingly, we, like the Court of Special Appeals, hold that the Circuit Court for Howard County erred in affirming the opinion of the State Board and reversing the opinion of the PSLRB, and further erred in granting the Howard County Board, in Case No. 13-C-12-090823, a permanent injunction preventing the arbitration demanded by the Association on behalf of the discharged school nurse. We therefore affirm the judgment of the Court of Special Appeals in that case as well as in Case No. 13-C-12-091545.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED; COSTS TO BE PAID BY PETITIONER.**

19