*Jose Ortiz Cerrato v. Toni Garner, et al.,* No. 301, September Term, 2022. Opinion by Albright, J.

**MARYLAND SECURITY DEPOSIT ACT – DEFINITION OF A SECURITY DEPOSIT –** A tenant's voluntary, advance payment of rent meets the broad definition of a security deposit under the Act, which includes any "payment of money" that protects a landlord against certain categories of risk, such as the risk of non-payment of rent. Advance payment of rent necessarily protects the landlord against that risk. Md. Code Ann., Real Prop. § 8-203(a).

**MARYLAND SECURITY DEPOSIT ACT – LIABILITY FOR EXCESSIVE SECURITY DEPOSIT –** A landlord does not violate the Act by accepting a tenant's voluntary, advance payment of rent for all but the last month of the term because liability under the Act is conditioned upon a landlord's imposition or charging of a security deposit in excess of the equivalent of two months' rent. By choosing this language, the Legislature limited liability under the remedial statute to cases where a landlord demands or requires a security deposit in excess of the statutory maximum and mere acceptance of advance rent does not suffice. Md. Code Ann., Real Prop. § 8-203(b).

Circuit Court for Anne Arundel County
Case No. C-02-CV-19-003370

REPORTED

IN THE APPELLATE COURT

OF MARYLAND*

No. 301

September Term, 2022

_____

JOSE ORTIZ CERRATO

v.

TONI GARNER, ET AL.

_____

Wells, C.J.
Albright,
Eyler, Deborah S.,
        (Senior Judge, Specially Assigned)

JJ.

_____

Opinion by Albright, J.

_____

Filed:  March 1, 2023

Pursuant to the Maryland Uniform Electronic Legal Materials Act (§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Gregory Hilton, Clerk

*At the November 8, 2022 general election, the voters of Maryland ratified a constitutional amendment changing the name of the Court of Special Appeals of Maryland to the Appellate Court of Maryland.  The name change took effect on December 14, 2022.

In July 2019, Jose Ortiz Cerrato ("Mr. Ortiz")[1], appellant, leased a residential property from Toni and Richard Garner ("the Garners"), appellees, for one year. Before signing the lease agreement, Mr. Ortiz and his wife, Denise Cintron ("Ms. Cintron"), who was not on the lease and is not a party to this case, offered to pay the full 12 months' rent upfront, in addition to a "security deposit" equivalent to one months' rent, in exchange for a reduction in the monthly rent. The Garners accepted that offer.

After Mr. Ortiz and his family had lived at the property for four months, he filed suit against the Garners in the District Court of Maryland for Anne Arundel County and prayed a jury trial. The case was then transferred to the Circuit Court for Anne Arundel County. Mr. Ortiz asserted multiple claims, including that the Garners had violated Md. Code, Real Prop. § 8-203(b) (1974, 2015 Repl. Vol), prohibiting excessive security deposits ("Count I"). On cross-motions for summary judgment, the circuit court resolved Count I in favor of the Garners. After disposition of the remaining claims in the case,[2] Mr. Ortiz appealed, raising a single question,[3] which we have rephrased as:

> Did the circuit court err by ruling that a landlord does not violate Real Prop. § 8-203 by accepting a tenant's unilateral offer to prepay rent?

---

[1] Appellant's counsel refers to Appellant as Mr. Ortiz, so we will as well.

[2] Those claims are not before us in this appeal.

[3] The question as posed by Mr. Ortiz is: "Whether the Circuit Court erred by misinterpreting Real Property § 8-203 by excluding from the statute any voluntary agreement between a tenant and landlord regarding advance payment of rent as a security deposit, and therefore applying the incorrect standard in ruling in favor of Defendants on summary judgment."

For the following reasons, we conclude that on these undisputed facts, the circuit court did not err and affirm the judgment of the circuit court.

## BACKGROUND

### I. Maryland Security Deposit Act

Security deposits are governed by Real Prop. § 8-203. Subsection (a) defines a security deposit to mean:

> any payment of money, including payment of the last month's rent in advance of the time it is due, given to a landlord by a tenant in order to protect the landlord against nonpayment of rent, damage due to breach of lease, or damage to the leased premises, common areas, major appliances, and furnishings.

Real Prop. § 8-203(a)(3).

Subsection (b)(1) limits the amount of a security deposit, providing that a "landlord may not impose a security deposit in excess of the equivalent of two months' rent per dwelling unit, regardless of the number of tenants." If a landlord "charges" more than two months' rent "as a security deposit, the tenant may recover up to threefold the extra amount charged, plus reasonable attorney's fees" in a legal action brought "at any time during the tenancy or within two years after its termination." Real Prop. § 8-203(b)(2)-(3).

### II. The Residential Lease Agreement

The Garners reside in Alabama and own a single-family home at 4304 Rousbys Run, West River, Maryland ("the Property"). In mid-July 2019, they listed the Property for rent for $2,900 per month through Samson Properties, LLC ("Samson"), a real estate broker. Damien Woodson ("Mr. Woodson") acted as the listing agent.

2

On July 24, 2019, Mr. Ortiz and Ms. Cintron attended an open house held by Mr. Woodson at the Property. On or about July 27, 2019, Mr. Ortiz offered to lease the Property for one year for $2,500 per month and to pay all the rent in advance.[4] Mr. Woodson communicated that offer to the Garners, who accepted it.[5]

Mr. Woodson prepared a standard form "Residential Lease Agreement" ("the Lease") for the Property, dated July 25, 2019. The Garners executed the Lease on July 31, 2019, and Mr. Ortiz did so on August 1, 2019.[6] The term of the Lease was one year, from August 5, 2019 through August 4, 2020.

Paragraph 4 specified that rent payments were to be made in "monthly installments" of $2,500, with rent due "in advance" on the first day of each month, beginning August 1, 2019. The total rent for the term of the Lease was $30,000. Paragraph 7 specified that the security deposit was $2,500. Paragraph 14 included information required by statute concerning the security deposit, including that Mr. Ortiz was obligated to deposit the amount set out in Paragraph 7 ($2,500) with the Garners and that the Garners acknowledged receipt of that amount. An integration clause at Paragraph 48 stated that the

---

[4] Mr. Ortiz, who does not speak English as his first language, conveyed the offer to Ms. Cintron, who conveyed it to Mr. Woodson.

[5] The Garners, through Mr. Woodson, counter offered $2,700 per month. Mr. Ortiz and Ms. Cintron did not accept that counteroffer and reiterated their initial offer.

[6] The first page of the Lease names Richard Garner as the landlord but does not identify a tenant. Mr. Ortiz initialed each page of the Lease and signed on the final page as the tenant. Ms. Garner also signed the Lease and initialed each page as a landlord.

Lease was the "full and final agreement between the parties" and that there were "no other verbal or implied conditions existing which [were] not contained [in the Lease]."

Meanwhile, on July 31, 2019, Ms. Cintron delivered a certified check to Samson for $5,000, comprising the first month's rent and the $2,500 security deposit.

On or about August 8, 2019, Ms. Cintron initiated a wire transfer in the amount of $25,000 to Samson, comprising 10 months' advance rent.[7] Mr. Ortiz and Ms. Cintron withheld one month's rent from the advance rent payment because of an ongoing dispute about the condition of the Property. Specifically, as Mr. Ortiz and his family began moving into the Property, they allegedly discovered a "major mold infestation," issues with the pool, and other alleged defects. Disputes quickly arose over remediation of these issues, which were raised in the lawsuit but are not before us in this appeal.

### III. The Lawsuit

On October 4, 2019, Mr. Ortiz filed his five-count complaint against the Garners[8] in the District Court. In Count I, he asserted that the Garners had accepted $30,000 from Mr. Ortiz upfront and that $27,500 of that amount was a "security deposit" as that term is defined in Real Prop. § 8-203(a) because it was a "payment of money" made in advance of

---

[7] Ms. Cintron testified at her deposition that she was selling a property and that she used a portion of the proceeds from the sale to cover the advance rent payment.

[8] In addition to Count I, Mr. Ortiz asserted claims for violation of Real Prop. § 8-216, prohibiting a landlord from threatening to take possession of the leased premises during the term of the lease (Count II); breach of the covenant of quiet enjoyment (Count III), fraudulent inducement (Count IV), and failure to deliver the property in a safe and livable condition (Count V).

4

the time it was due to protect the Garners against the risk of unpaid rent. Because the Garners were prohibited from collecting more than the equivalent of two months' rent ($5,000) as a security deposit, Mr. Ortiz asserted that they had violated Real Prop. § 8-203(b)(1) and that he was entitled to recover up to three times the excess $22,500, or $67,500, plus reasonable attorneys' fees. After Mr. Ortiz prayed a jury trial, the case was transferred to the circuit court.

The Garners answered the complaint, counterclaimed for breach of contract, and filed a third-party complaint against Samson and Mr. Woodson. The Garners asserted claims for negligent misrepresentation, professional malpractice, and breach of fiduciary duty, all of which related to Mr. Ortiz's claim in Count I of his complaint.

The Garners moved for summary judgment and Mr. Ortiz moved for partial summary judgment on Count I. The exhibits to the Garners' motion included the email exchanges containing the lease negotiations between the parties; the Lease; and the depositions of Mr. Ortiz, Ms. Cintron, and Mr. Woodson. Samson and Mr. Woodson filed a combined response to the motions and joined the Garners' motion for summary judgment as to Count I.

On July 23, 2021, the circuit court heard argument on Mr. Ortiz's motion for partial summary judgment and denied it. The court then heard argument from counsel for Samson and Mr. Woodson on their motion for summary judgment on Count I.[9] Counsel argued that

---

[9] Because the hearing notice specified that the hearing only would address Mr. Ortiz's motion for partial summary judgment, as well as the oppositions thereto filed by

(Continued…)

5

a "unilateral offer extended" by a tenant to pay rent in advance is not a security deposit "imposed" by a landlord under Real Prop. § 8-203(b)(1). The Garners joined in that argument. Mr. Ortiz countered that *any* payment of rent made before it was due met the statutory definition of a security deposit and that if it was accepted, it was charged or imposed by the landlord.

The circuit court ruled that because Mr. Ortiz offered to make an advance rent payment for the term of the Lease, it was not imposed by the Garners and thus was not a violation of Real Prop. § 8-203(b). The court granted Samson and Mr. Woodson's motion for summary judgment on the third-party complaint and, by agreement of the parties, also granted the Garners' motion on Count I of the complaint.

On September 23, 2021, the Garners, Samson, and Mr. Woodson stipulated to the dismissal of the third-party complaint. On January 31, 2022, the circuit court heard argument on the Garners' motion for summary judgment on the remaining four counts and granted summary judgment in their favor on Counts II, III, and IV. On March 16, 2022, the Garners and Mr. Ortiz stipulated to the dismissal, without prejudice, of Count V of the complaint and the Garners' counter-complaint. The court entered a judgment of dismissal of those claims on March 21, 2022. This timely appeal followed.

We shall include additional facts as necessary to our resolution of the issues.

---

the Garners, Samson, and Mr. Woodson, the court did not permit the Garners to argue their motion for summary judgment at the hearing. Samson and Mr. Woodson were permitted to argue for summary judgment in favor of the Garners on Count I, however, because they had incorporated the Garners' motion on Count I in their combined response to the cross-motions.

**STANDARD OF REVIEW**

Summary judgment is appropriate when the material facts in a case are not subject to genuine dispute and the moving party is entitled to judgment as a matter of law. Md. Rule 2-501(f). This Court reviews the grant of a motion for summary judgment without deference, "examining the record independently to determine whether any factual disputes exist when viewed in the light most favorable to the non-moving party and in deciding whether the moving party is entitled to judgment as a matter of law." *Steamfitters Local Union No. 602 v. Erie Ins. Exch.*, 469 Md. 704, 746 (2020) (citing *Rowhouses, Inc. v. Smith*, 446 Md. 611, 630 (2016)). "Evidentiary matters, credibility issues, and material facts which are in dispute cannot properly be disposed of by summary judgment." *Taylor v. NationsBank, N.A.*, 365 Md. 166, 174 (2001).

**DISCUSSION**

Mr. Ortiz contends that the circuit court erred by granting summary judgment on Count I because Real Prop. § 8-203 made it unlawful for the Garners to accept $22,500 in advance of when rent was due, whether that money was characterized as rent or as a security deposit. He emphasizes that the definition of a "security deposit" includes "payment of the last month's rent in advance of the time it is due" and argues that his advance payment of 10 months' rent secured the Garners' against the risk of nonpayment of rent. That Mr. Ortiz and the Garners "negotiated and agreed to the advanced payment of money" is immaterial, in his view, because a meeting of the minds is reached in every lease agreement. Considering that Real Prop. § 8-203(b) is a remedial statute enacted to protect tenants, he maintains that any ambiguity in the statute should be construed in his favor.

7

The Garners respond that a unilateral offer to pay rent in advance does not violate Real Prop. 8-203(b). They maintain that the purpose of Mr. Ortiz's offer to pay advance rent, by his own admission, was "to buy down the monthly rental amount" and, consequently, it was not paid to protect the Garners against non-payment of rent and is not a "security deposit." Even if the advance rent could meet the definition of a security deposit, however, because it was not "impos[ed]" by the Garners, their acceptance of it did not violate Real Prop. § 8-203(b)(1).

Our "primary goal in interpreting statutory language is to discern the legislative purpose, the ends to be accomplished, or the evils to be remedied by the statutory provision under scrutiny." *Lockshin v. Semsker*, 412 Md. 257, 274 (2010). We begin "'with the plain language of the statute, and ordinary, popular understanding of the English language dictates interpretation of its terminology.'" *Blackstone v. Sharma*, 461 Md. 87, 113 (2018) (quoting *Schreyer v. Chaplain*, 416 Md. 94, 101 (2010)). "The statutory language should be read so that no word or phrase renders any part of it 'meaningless, surplusage, superfluous, or nugatory.'" *Bd. of Educ. of Howard Cnty. v. Howard Cnty. Educ. Ass'n-ESP*, 445 Md. 515, 533 (2015) (quoting *Blitz v. Beth Isaac Adas Israel Congregation*, 352 Md. 31, 40 (1998)). "'We, however, do not read statutory language in a vacuum, nor do we confine strictly our interpretation of a statute's plain language to the isolated section alone.'" *Johnson v. State*, 467 Md. 362, 372 (2020) (quoting *Wash. Gas Light Co. v. Md. Pub. Serv. Comm'n*, 460 Md. 667, 685 (2018)). Instead, "'[w]e presume that the Legislature intends its enactments to operate together as a consistent and harmonious body of law, and, thus, we seek to reconcile and harmonize the parts of a statute, to the extent

possible consistent with the statute's object and scope.'" *Gerety v. State*, 249 Md. App. 484, 498 (2021) (quoting *State v. Bey*, 452 Md. 255, 266 (2017)). We will also "consider the consequences resulting from one meaning rather than another, and adopt that construction which avoids an illogical or unreasonable result, or one which is inconsistent with common sense." *Bolling v. Bay Country Consumer Fin., Inc.*, 251 Md. App. 575, 589 (2021), *reargument denied* (Sept. 2, 2021).

Real Prop. § 8-203(b) is a remedial statute because it provides a remedy to tenants not otherwise available at common law. *See Lockett v. Blue Ocean Bristol, LLC*, 446 Md. 397, 424 (2016) ("When a statute provides remedies not available at common law, the statute is remedial."); *Pak v. Hoang*, 378 Md. 315, 326-28 (2003) (holding that Real Prop. § 8-203(e)(4) is remedial because it permits an award of treble damages if a landlord fails to return all or part of a security deposit within 45 days without a reasonable basis). We construe a remedial statute broadly to effectuate its remedial purpose. *Bolling*, 251 Md. App. at 608. Nevertheless, "we are restricted by the boundaries established by the language of the statute itself." *Mohan v. Norris*, 386 Md. 63, 84-85 (2005) (citing *Price v. State*, 378 Md. 378, 387 (2003)); *see also Johnson v. Nationwide Mut. Ins. Co.*, 388 Md. 82, 95 (2005) ("The words of the [remedial] statute itself delineate the extent of the statute's reach.").

Real Prop. § 8-203(b) limits the amount that a landlord may impose as a security deposit to the equivalent of two months' rent. The statute is intended to prevent a landlord from demanding an excessive upfront payment from a tenant to secure the landlord against risk, which payment would be cost prohibitive for many prospective tenants. Further, because a landlord may withhold a security deposit at the end of a tenancy, a tenant would

9

be significantly disadvantaged if a security deposit was excessive and improperly withheld. *See Pak*, 378 Md. at 328 (reasoning that a "landlord not returning a security deposit, when she [or he] is required to do so, forces the tenant to bring suit"). Because the excess amount of a security deposit charged in a residential lease ordinarily would be a relatively small sum, however, the Legislature saw fit to allow for treble damages and reasonable attorneys' fees to "balanc[e] the costs of litigation against the amount of recovery[.]" *Id*.

Section 8-203(a)(3) defines a "security deposit" in relation to the purpose for which the payment is made and payments of money made to "protect the landlord" against certain risks of loss, including "nonpayment of rent," fall within its scope. In this case, the payment of all but the last month's rent in advance clearly had the effect of protecting the Garners against the non-payment of rent during the term of the lease and, consequently, it fell within the broad definition of a security deposit.

Turning to Real Prop. § 8-203(b), we are satisfied that the Garners did not impose or charge an excessive security deposit based the undisputed facts in the summary judgment record. Real Prop. § 8-203(b)(1) makes its unlawful for a landlord to "impose" a security deposit in excess of the equivalent of two months' rent. Real Prop. § 8-203(b)(2) permits a tenant to recover up to three times the amount of any excess security deposit "charge[d]" by the landlord. The ordinary meanings of "impose" is to "establish or apply by authority" or "to establish or bring about as if by force." Impose, Merriam-Webster, https://www.merriam-webster.com/dictionary/impose (last visited Jan. 18, 2023). The word "charge" is defined, in relevant part, as "to ask payment of (a person)." Charge*,*

10

Merriam-Webster, https://www.merriam-webster.com/dictionary/charge (last visited Jan. 18, 2023).

It is well established that courts should neither add words to, nor delete words from, a clear and unambiguous statute to give it a meaning not reflected by the language the Legislature chose to use. *Taylor*, 365 Md. at 181. Here, the Legislature chose to use words that require that a landlord have actively requested, demanded, or required the payment of an excess security deposit in order for a tenant to avail him or herself of the remedies in Real Prop. § 8-203(b). This is consistent with the statutory aim, which is to prevent overreach by a landlord with unequal bargaining power. *See Lockett*, 446 Md. at 419-20 (explaining that residential leases often are provided on a "take-it-or-leave-it basis" and are "not the subject of extensive negotiation"). The "boundaries established by the language of the statute itself" reflect that the Legislature limited liability to circumstances where the landlord demands payment of a security deposit in excess of the statutory maximum. *Mohan*, 386 Md. at 84-85 (citing *Price*, 378 Md. at 387).

On the facts present here, no such demand was made. It is undisputed that Mr. Ortiz offered to pay the total rent in advance in exchange for a reduction in the monthly rent from the advertised price of $2,900 per month to $2,500 per month, for a savings of $4,800 over the term of the Lease. He testified at his deposition that he negotiated this deal because "[l]ogically . . . it was cheaper." By accepting this offer, the Garners did not impose or charge a security deposit of $27,500. Rather, they accepted Mr. Ortiz's voluntary payment of the total rent in advance.

11

The voluntariness of the payment is further underscored by the terms of the Lease, which did not obligate Mr. Ortiz to make the rent payment in advance. The Lease required a $2,500 security deposit and stated that $2,500 in rent was due in monthly installments, payable on the first day of each month. Mr. Ortiz executed the Lease on August 1, 2019. Ms. Cintron did not wire the advance rent to Samson until on or about August 8, 2019. Thus, by the express terms of the Lease, the only security deposit imposed or charged was $2,500.[10]

Mr. Ortiz's reliance on *Camer v. Lupinacci*, 96 Md. App. 118 (1993), the only Maryland case applying Real Prop. § 8-203(b), is misplaced. In *Camer*, tenants sued their landlord alleging, in pertinent part, that she had "demand[ed]" three months' rent as a security deposit, an excess of $900, and had not supplied a receipt for it. *Id*. at 120. In her answer, the landlord admitted "collecting" the excess security deposit. *Id*. at 121. The circuit court granted summary judgment in favor of the tenants for breach of Real Prop. § 8-203(b) and awarded them $1,800 in damages. *Id*. On appeal, we affirmed that judgment, explaining that the landlord admitted "that she collected" a security deposit equivalent to three months' rent, making "[t]he statutory violation . . . beyond dispute[.]" *Id*. at 122. We also rejected the landlord's argument that the tenants were obligated to prove actual damages occasioned by the violation of Real Prop. § 8-203(b), reasoning that the statute included no such requirement. *Id*. at 123.

---

[10] The enforceability of the agreement to pay advance rent in light of the integration clause in the Lease was not raised in the underlying case. Mr. Ortiz and his family lived at the Property until the end of the Lease term and, consequently, he was not seeking return of any of the advance rent.

In Mr. Ortiz's view, this Court's use of the word "collected" in *Camer* reflects that a landlord's receipt or acceptance of any advance payment of money is actionable. In *Camer*, however, there was no dispute that the landlord required the tenants to pay the equivalent of three months' rent in advance *as a security deposit*, in addition to their regular rent. Because there was no dispute about the imposition of the excess amount, this Court had no occasion to construe the terms "impose" or "charge[]" as used in Real Prop. § 8-203(b)(1)-(2). That issue is squarely before us in this case and, for the reasons already discussed, we hold that the Garners did not impose or charge a security deposit in excess of the statutory maximum. We affirm.

**JUDGMENT OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**

13